## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**COLLEEN A. GLYNN,**
**CHRISTOPHER P. WELLING**          Case No. 1:19-cv-12189-IT
in their capacity as Trustees and
Fiduciaries of ERISA Plans,

and **DOUGLAS C. ANDERSON,**
on his own behalf and on behalf
of others similarly situated,

                 Plaintiffs,

vs.

**MARTIN SPORTS & ENTERTAINMENT, LLC,**
**DAVID MARTIN** and **THERESA MARTIN,**

                 Defendants.

_____

## <u>BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR DISMISSAL OF PLAINTIFFS' COMPLAINT</u>

## TABLE OF CONTENTS

Index of Authorities .................................................................................................................. V

I.    Introduction ................................................................................................................. 1

II.   Statement of Facts ..................................................................................................... 4

III.  Argument ................................................................................................................... 10

      A.  Standards Applicable to Defendant's Motion ................................................. 10

      B.  The Court Lacks Subject Matter Jurisdiction over Plaintiffs' claims because these are subject to the primary jurisdiction of the National Labor Relations Board and Plaintiff also has failed to state claims upon which relief may be granted because their claims otherwise are preempted by sections 7 and 8 of the National Labor Relations Act ................................................................. 11

IV.   Conclusion and Relief ............................................................................................. 20

## INDEX OF AUTHORITIES

*Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001) ...............................................17, 18, 20

*Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–13, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ...................................................................................................................................................................18

*Amalgamated Cloth. & Text. Wkrs. v. Facetglas, Inc.*, 845 F.2d 1250, 1251 (4th Cir. 1988) ......... ................................................................................................................................................................ 12, 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...................................................................11

*Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012)..............16, 17, 18, 20

*DLX, Inc., v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).............................................................10

*Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir.1997) ............................................ 18, 20

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261, 114 S.Ct. 2239, 2248, 129 L.Ed.2d 203 (1994).......................................................................................................................................................16

*Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).................................................11

*Lawless v. Steward Health Care System*, LLC, 894 F.3d 9, (1st Cir. 2018) ....................................16

*Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 41-42 (1st Cir.) (recounting development of section 301 preemption), *cert. denied*, ___ U.S. ___, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997)....15

*Morgan v. Massachusetts General Hosp.*, 901 F.2d 186, 194 (1st Cir.1990)........................ 13, 21

*Motor Coach Employees v. Lockridge*, 403 U.S. 274, 288-89, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971)................................................................................................................................................ 12, 13, 14

*Murphy v. United States*, 45 F.3d 520. 522 (1st Cir. 1995)..................................................................10

*Nash v. Florida Indus. Comm'n*, 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438 (1967) ................................................................................................................................................................11

*New Mexico Dist. Council of Carpenters, AFL–CIO v. Mayhew Co.*, 664 F.2d 215 (10th Cir.1981) ................................................................................................................................................................13

*Nollet v. Justices of Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D. Mass. 2000) ......................10

*Nova Plumbing, Inc. v. NLRB*, 330 F.3d 531, 534 (D.C.Cir.2003) ................................................12

*O'Brien v. Town of Agawam*, 350 F.3d 279, 285 n. 12 (1st Cir.2003) ...............................................18

*Raymond F. Kravis Center for the Performing Arts, Inc., v. N.L.R.B.*, 550 F.3d 1183, 1187-1189 (D.C. Cir. 2008)................................................................................................................................. 12, 14

*San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959) ................................................................................................................................ 13, 14

*Stanton v. Lighthouse Fin. Servs., Inc.,* 621 F.Supp.2d 5, 10 (D.Mass.2009) ................................ 19

*Strand Theatre of Shreveport Corp. v. NLRB,* 493 F.3d 515, 518 (5th Cir.2007) ................ 12, 14

*Teixeira V. Quality Beverage LTD. Partnership*, 351 F.Supp. 3d 188, 192-193 (D. Mass. 2019). ................................................................................................................................................. 20

*Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957) ................................................................................................................................................ 14, 15

*Textron Lycoming Reciprocating Engine Div. v. UAW,* 523 U.S. 653, 657, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) ..................................................................................................................... 19

*United Steelworkers v. Rawson,* 495 U.S. 362, 369, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990) ...................................................................................................................... 17, 18, 20

*Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ........................................... 13, 14

*Vadino v. A. Valey Eng'rs,* 903 F.2d 253, 266 (3d Cir.1990) ..................................................... 18

*Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 761 (6th Cir.2006) ........................................... 11

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**COLLEEN A. GLYNN,**
**CHRISTOPHER P. WELLING**              Case No. 1:19-cv-12189-IT
in their capacity as Trustees and
Fiduciaries of ERISA Plans,

and **DOUGLAS C. ANDERSON,**
on his own behalf and on behalf
of others similarly situated,

                    Plaintiffs,

vs.

**MARTIN SPORTS & ENTERTAINMENT, LLC,**
**DAVID MARTIN** and **THERESA MARTIN,**

                    Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR DISMISSAL OF PLAINTIFFS'**
**COMPLAINT**

## I.      INTRODUCTION

        Plaintiffs, Colleen A. Glynn ("Glynn") and Christopher P. Welling ("Welling"),
have asserted claims against Defendant Martin Sports & Entertainment, LLC ("Martin
Sports") in their alleged capacities as trustees and fiduciaries of employee benefit plans
("plans") sponsored by Local 11 of the International Alliance of Theatrical Stage Employees
("Local 11") for their members. They claim that Martin Sports failed to make contributions
to the plans required by an alleged collective bargaining agreement and related Trust
Acceptance Agreement {"agreements") between Martin Sports and Local 11, copies of which
were attached as Exhibit B to Plaintiff's Complaint, in violation of sections 502(a)(3) (29
U.S.C. § 1132(a)(3)) and 515 (29 U.S.C. §1145) of the Employee Retirement Income Security
Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1001, *et seq. See* Plaintiffs' Complaint, ¶¶ 1,2-

3, 8-17 and Exhibit B to Plaintiffs' Complaint. According to Plaintiffs, Glynn and Welling, the contributions allegedly due to the plans were to have been calculated at rates specified in the alleged collective bargaining agreement based on wages paid to Plaintiff Douglas C. Anderson ("Anderson") and other alleged Local 11 members referred to Martin Sports to perform stage installation and removal at Boston Bruins Fan Fest events produced by Martin Sports on May 9, 12, 27, and 29, 2019. *Id.*

Plaintiff Anderson has asserted claims against Martin Sports and Defendants, David Martin and Theresa Martin (collectively "Defendants"), for violations of Massachusetts Weekly Wage Act, Mass. Gen. Laws Chapter 149, Section 148, on his own behalf and purportedly on behalf "others similarly situated." *See* Plaintiff's Complaint, ¶¶ 1, 4, 8-14, 18-21and Exhibit A to Plaintiffs' Complaint. These are premised on allegations that Martin Sports hired them to perform stage installation and removal at the Boston Bruins Fan Fest events, but did not pay wages allegedly due to them in accordance with the terms of the alleged collective bargaining agreement between Martin Sports and Local 11. *See* Plaintiff's Complaint, ¶¶ 1, 4, 8-14, 18-21and Exhibit B to Plaintiffs' Complaint.

Each Plaintiff necessarily alleges by implication in support of their claims that Local 11 was the designated bargaining representative of Anderson and those he purports to represent in accordance with the requirements of either section 8 (f) or 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§151, *et seq.*, *see* 29 U.S.C. §§158(f), 159(a), and that the alleged collective bargaining agreement between Martin Sports and Local 11 was permissibly obtained either in accordance section 8(f) or through collective bargaining mandated by sections 8(a)(5), 8 (b)(3),  and 8(d) of the NLRA, 29 U.S.C. §§158(a)(5), 158(b)(3), and 158(d). The alleged collective bargaining agreement includes provisions pertaining to: minimum daily work call of no less than eight (8) consecutive hours regardless of actual hours worked; the defined work week and overtime for work in excess of 8 hours

during a work day and 40 hours during a work week; wage rates for work on Saturday, Sunday and holidays, for work beginning before 6:00 a.m. and during the hours between 12:00 a.m. and 8:00 a.m.; wage rates applicable when there is a lay off and recall before an 8 hour rest period has elapsed; meal periods; and rates of contribution to the plans, among others. *See* Exhibit B to Plaintiff's Complaint, pp. 1-5.

Defendants have denied the allegations asserted by Glynn and Welling as trustees and Anderson on behalf of himself and others he purports to represent. They have averred that the alleged collective bargaining agreement and trust agreement are unenforceable because: each is not a valid agreement within the meaning of 29 U.S.C. §158(f) or one obtained consistent with the requirements of 29 U.S.C. §159(a); these were procured by acts of fraud and misrepresentation by Plaintiff Glynn as a business agent for IATSE, Local 11; there was no requisite bargaining over, consideration for, acceptance of, or mutuality with respect to the terms of the alleged agreements as required by sections 8(a)(5), 8 (b)(3), and 8(d) of the NLRA, 29 U.S.C. §§158(a)(5), 158(b)(3), and 158(d); the alleged agreements were signed by someone without authority to bind Martin Sports and without authorization from Martin Sports; and it was represented by Plaintiff Glynn to Defendant Theresa Martin that each alleged agreement was a "standard one time agreement." They also assert that Local 11 and/or its payroll company, Art Payroll, overcharged Martin Sports for costs of labor contrary to terms to which Martin Sports and Local 11 had actually agreed and that Local 11 and/or Art Payroll refused to provide invoices to Martin Sports for costs of labor that comport with the terms to which Martin Sports and Local 11 had actually agreed. *See* Defendants' Answer, ¶¶ 10-12, 15-21 and Special and Affirmative Defenses 1-17; Exhibit 1: Declaration of David Martin, ¶¶1-20; Exhibit 2: Declaration of Theresa Martin, ¶¶ 1-25.

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and Fed. R. Civ. P. 12 (c) to dismiss the claims of Plaintiffs, Glynn and Welling, for violations of Sections 502 (a) (3) and 515 of ERISA, Plaintiff Anderson's claims for violations of Massachusetts General Laws Chapter 149, Section 148, and any express or implied claims for breach of any alleged collective bargaining and trust agreements. Defendants are entitled to this relief for each of the reasons stated in their motion.

## II. STATEMENT OF FACTS

Defendant Martin Sports is a Michigan limited liability corporation engaged in the sports promotion business. It conducts sports promotion events for various professional sports teams which are its customers at various locations around the county. *See* Exhibit 1: Declaration of David Martin, ¶¶ 1-2. Defendant David Martin is its sole member or owner and its President and CEO. Exhibit 1: Declaration of David Martin, ¶¶1-3. His wife, Defendant Theresa Martin, is an administrative assistant for Martin Sports.  She is not a member, owner or officer of the company, and she does not have authority to sign contracts of any kind on its behalf. *See* Exhibit 1: Declaration of David Martin, ¶ 4.

Martin Sports does not employ on a permanent basis its own hourly paid work force for installation and removal of stages and other equipment used for its sports promotion events at various locations around the county. Instead, it typically retains stagehands and other labor for this purpose on a casual and event by event basis. They are recruited by Martin Sports through help wanted advertisements or referred to it by various local unions around the county which are affiliated with International Alliance of Theatrical Stage Employees ("IATSE") and with which Martin Sports has established a referral relationship. *See* Exhibit 1: Declaration of David Martin, ¶5. Defendant Theresa Martin assists with

scheduling and retention of such labor. *See* Exhibit 2: Declaration of David Martin, ¶6. IATSE affiliated unions have typically referred stagehands and other labor to Martin Sports for its events on a casual and event by event basis at regular or straight time hourly wage rates without a requirement that Martin Sports bargain over, enter into, or abide by the terms of collective bargaining agreements with the local unions. *See* Exhibit 1: Declaration of David Martin, ¶7.

On May 9, 12, 27 and 29, Martin Sport produced Boston Bruins' Fan Fest events before the Boston Bruins' hockey playoff home games. *See* Plaintiffs' Complaint, ¶9; Exhibit 1: Declaration of David Martin, ¶8. Consistent with past practice between Martin Sports and IATSE affiliated unions, on May 8, 2019, Defendant Theresa Martin contacted Colleen Glynn, a business agent for Local 11, and requested that the Local refer a crew of 10 stagehands to Martin Sports to work an 8 hour shift at regular or straight time wage rates beginning at 9 a.m. on May 9, 2019, to install a stage for a Bruins Fan Fest event. *See* Exhibit 1: Declaration of David Martin, ¶9; Exhibit 2: Declaration of Theresa Martin, ¶7. Ms. Glynn acknowledged and accepted the terms of the stagehand referral on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶7.

However, Ms. Glynn later sent what she described as a "standard one time agreement" to Ms. Martin for her to sign ostensibly as confirmation of the referral arrangement between Martin Sports and Local 11. *See* Exhibit 1: Declaration of David Martin, ¶10; Exhibit 2: Declaration of Theresa Martin, ¶8. Ms. Glynn did not disclose any inconsistencies between the agreement and the terms of the stagehand referral acknowledged and accepted by her on behalf of Local 11. She also did not invite Defendant Theresa Martin or any authorized representative of Martin Sports to engage in or engage any of them in bargaining of any kind

pertaining the terms of the agreement. *See* Exhibit 2: Declaration of Theresa Martin, ¶8. Defendant Theresa Martin signed the agreement and returned it to Ms. Glynn on May 9, 2019, based on Ms. Glynn's representations and assurances that the agreement conformed with the terms of the stagehand referral acknowledged and accepted by Ms. Glynn on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶9. She did so without authorization from her husband and although he had not reviewed or accepted the terms of the agreement as Martin Sports' owner. *See* Exhibit 1: Declaration of David Martin, ¶11; Exhibit 2: Declaration of Theresa Martin, ¶9.

Later, on May 9, 2019, Defendant Theresa Martin sent an email to Ms. Glynn and requested that she refer a different 6-person crew to work a 4-hour shift at regular or straight time wage rates beginning at 10:30 p.m. on May 9, 2019, to remove the Fan Fest stage because of a police department requirement. *See* Exhibit 2: Declaration of Theresa Martin, ¶10. Crews allegedly referred by Local 11 to Martin Sports performed the Bruin Fan Fest stage installation and removal on May 9, 2019[1]. *See* Exhibit 1: Declaration of David Martin, ¶12; Exhibit 2: Declaration of Theresa Martin, ¶11.

During the period between May 10-11, 2019,  Defendant Theresa Martin contacted Ms. Glynn and requested that Local 11 refer a 10-person crew on May 12, 2019, beginning at 8 a.m. for a 4 to-5 hour shift at regular or straight time wage rates for another Bruins Fan Fest stage installation and a different 10-person crew of 10 beginning at 6 p.m. on May 12, 2019, for a 4 hour shift at regular or straight time wage rates to remove the stage. *See* Exhibit

---

[1] None of the stagehands allegedly referred to Martin Sports by Local 11 on May 9, 12, 27, and 29, 2019, provided Martin Sports with contact information and timesheets of any kind pertaining to their work hours. *See* Exhibit 1: Declaration of David Martin, ¶13; Exhibit 2: Declaration of Theresa Martin, ¶14, 21.

2: Declaration of Theresa Martin, ¶12. She also advised Ms. Glynn that Martin Sports had a limited budget with no ability to pay overtime rates and that Ms. Glynn should let her know if this was problematic. *See* Exhibit 2: Declaration of Theresa Martin, ¶12. Ms. Glynn acknowledged and accepted the terms of this stagehand referral on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶12. Crews allegedly referred by Local 11 performed the Fan Fest stage installation and removal on May 12, 2019. *See* Exhibit 1: Declaration of David Martin, ¶12; Exhibit 2: Declaration of Theresa Martin, ¶13.

On May 20, 2019, Martin Sports was sent an invoice from Art Payroll in the amount of $24, 581.86 for the May 9 and 12, 2019 Bruin Fan Fest stage installations and removals. The invoice disclosed that Martin Sports was billed for excessive contributions to the plans and for excessive wages attributed to work allegedly performed by Anderson and those he purports to represent; that it was billed  for many alleged work hours at one and a half or double the regular wage rates applicable to the various stagehand classifications; and that it was billed for and for many hours when stagehands did not actually perform work. *See* Exhibit 1: Declaration of David Martin, ¶14; Exhibit 2: Declaration of Theresa Martin, ¶15.

In particular, contrary to what Defendant Theresa Martin requested on May 8, 2019, for work performed on May 9, 2019, Art Payroll billed Martin Sports for:  4 stagehands who purportedly worked at straight time wage rates for 8 hours; 4 who purportedly worked at straight time wage rates for 6 hours and 2 hours at double time; and 6 who purportedly worked at straight time wage rates for 14 hours and double time for 2 hours. Martin Sports was erroneously billed for 160 work hours instead of the 104 work hours needed for the May 9, 2019 stage installation and removal. *See* Exhibit 1: Declaration of David Martin, ¶15; Exhibit 2: Declaration of Theresa Martin, ¶16.  The May 20, 2019 invoice also evinced,

contrary to what Defendant Theresa Martin requested on May 10-11, 2019, for work performed on May 12, 2019, that Art Payroll billed Martin Sports for 12 people who purportedly worked 8 hours at time and a half and 4 people who purportedly worked 16 hours at time and a half. Martin Sports was erroneously billed for 240 hours instead of the 80 to 90 hours needed for the May 12, 2019 stage installation and removal. *See* Exhibit 1: Declaration of David Martin, ¶16; Exhibit 2: Declaration of Theresa Martin, ¶17.

On May 25, 2019, Defendant Theresa Martin contacted Ms. Glynn and requested that Local 11 refer a crew of 6 stagehands and 1 fork lift driver beginning at 7 a.m. on May 27, 2019, for a 5 hour shift at straight time rates for Fan Fest stage installation and a crew of 6 stagehands and 1 fork lift driver beginning at 8 p.m. on May 27, 2019, for a 4 hour shift at straight time rates for Fan Fest stage removal. *See* Exhibit 2: Declaration of Theresa Martin, ¶18. Ms. Martin advised Ms. Glynn that the budget for these services was limited to $5000. *See* Exhibit 3: Declaration of Theresa Martin, ¶18. Ms. Glynn acknowledged and accepted the terms of the stagehand referral on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶18. Crews allegedly referred by Local 11 performed the Fan Fest stage installation and removal on May 27, 2019. *See* Exhibit 1: Declaration of David Martin, ¶12; Exhibit 2: Declaration of Theresa Martin, ¶20.

On May 28-29 2019, Defendant Theresa Martin contacted Ms. Glynn requesting that Local 11 refer a crew of 6 stagehands and 1 fork lift driver beginning at 8 a.m. on May 29, 2019, for a 5 hour shift at straight time wage rates for Fan Fest stage installation and a crew of 6 stagehands and 1 fork lift driver beginning at 8 p.m. on May 29, 2019, for a 4 hour shift at straight time wage rates for Fan Fest stage removal. *See* Exhibit 2: Declaration of Theresa Martin, ¶19. Ms. Martin advised Ms. Glynn that the budget for these services was limited to

$5000. Ms. Glynn acknowledged and accepted the terms of the stagehand referral on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶19. Crews allegedly referred by Local 11 performed the Fan Fest stage installation and removal on May 29, 2019[2]. *See* Exhibit 1: Declaration of David Martin, ¶12; Exhibit 2: Declaration of Theresa Martin, ¶20.

On June 4, 2019, Martin Sports was sent an invoice from Art Payroll in the amount of $10, 794.09 for the May 27 and 29, 2019 Fan Fest stage installations and removals. The invoice disclosed that Martin Sports was billed for excessive contributions to the plans and for excessive wages attributed to  work allegedly performed by Anderson and those he purports to represent; that it was billed  for many alleged work hours at one and a half or double the regular wage rates applicable to the various stagehand classifications; and that it was billed for and for many hours when stagehands did not actually perform work. *See* Exhibit 1: Declaration of David Martin, ¶17; Exhibit 2: Declaration of Theresa Martin, ¶22.

In particular, contrary to what Defendant Theresa Martin requested on May 25, 2019, for work performed on May 27, 2019, Art Payroll billed Martin Sports for: 2 stagehands who purportedly worked at time and a half for 5 hours and 5 who purportedly worked at time and a half for 9 hours. Martin Sports was erroneously billed for 82.5 hours instead of the 63 hours needed for the May 27, 2019 stage installation and removal. *See* Exhibit 1: Declaration of David Martin, ¶18; Exhibit 2: Declaration of Theresa Martin, ¶23. The June 4, 2019 invoice also evinced, contrary to what Defendant Theresa Martin requested on May 28-29, 2019, for work performed on May 29, 2019, that Art Payroll billed Martin Sports for: 5 stagehands who purportedly worked at time and a half for 4 hours and 5 who purportedly worked at straight

---

[2] *See* n. 4, *supra.*

time wage rates for 8 hours. Martin Sports was erroneously billed for 70 hours instead of the 63 hours needed for the May 29, 2019 stage installation and removal. *See* Exhibit 1: Declaration of David Martin, ¶19; Exhibit 2: Declaration of Theresa Martin, ¶24.

## III.    ARGUMENT

**PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R.CIV. P. 12(b)(1) AND (6) AND FED. R.CIV. P.12(c)**

### A.  Standards Applicable to Defendants' Motion

**Fed. R. Civ. P. 12(b)(1)**

Under Rule12(b)(1) of the Federal Rules of Civil Procedure, a defendant may challenge whether a court has requisite subject matter jurisdiction based on the allegations of the complaint, which the court deems to be true for purposes of Rule 12 (b)(1) analysis. , *Muniz-Rivera v. United States*, 326 F.3d 8,  11 (1st Cir. 2003).  The plaintiff bears the burden of proving that jurisdiction exists. *Murphy v. United States*, 45 F.3d 520. 522 (1st Cir. 1995) *DLX. Inc., v. Kentucky*, 381F.3d 511, 516 (6th Cir. 2004).

**Fed. R. Civ. P. 12(b)(6)**

A complaint fails to state an actionable claim subject to dismissal under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When it deliberates over the merits of a motion to dismiss predicated on the allegations made in a complaint, the Court should consider only the facts alleged in the complaint, documents attached as exhibits to or incorporated by reference in the complaint, and matters of which judicial notice can be taken. *Nollet v. Justices of Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).

To survive a motion to dismiss, a plaintiff must plead "enough factual matter" that, when taken as true, "raise[s] a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). *See also Iqbal*, 556 U.S. at 678-679. A plaintiff's claim is sufficient to avoid dismissal only if the court is able based on review of the complaint and attached or referenced documents to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

This standard of review requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" by the plaintiff. *Twombly*, 550 U.S. at 555-556, 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678-679, quoting *Twombly*, 550 U.S. at 557[3].

**B. The Court Lacks Subject Matter Jurisdiction over Plaintiffs' claims because these are subject to the primary jurisdiction of the National Labor Relations Board and Plaintiff also has failed to state claims upon which relief may be granted because their claims otherwise are preempted by sections 7 and 8 of the National Labor Relations Act**

The National Labor Relations Act, as amended ("NLRA"), 29 U.S.C. §§151, *et seq.*, "is a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce." *Nash v. Florida Indus. Comm'n*, 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438 (1967). The NLRA reflects congressional intent to create a uniform, nationwide body of labor law interpreted by a centralized expert agency—the National Labor Relations Board ("NLRB"). Id. In matters of collective bargaining, federal regulation is

---

[3] A Rule 12 (c) motion for judgment on the pleadings requires application of the same standards that govern motions to dismiss under Rule 2(b)(6). *See* Fed.R.Civ.P.12(c); *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 761 (6th Cir.2006).

exclusive and is vested in the NLRB. See *Motor Coach Employees v. Lockridge*, <u>403 U.S. 274,</u> <u>288-89</u>, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) (summarizing rationale for preemption as it relates to the need for a uniform national labor policy).

The NLRA vests the NLRB with exclusive jurisdiction to resolve issues pertaining whether employees wish to be represented by a union, identification of an appropriate collective-bargaining unit, certification of an exclusive bargaining agent. *See* 29 U.S.C.A. § § 157, 59. *See also Amalgamated Cloth. & Text. Wkrs. V. Facetglas, Inc*., 845 F.2d 1250, 1251 (4th Cir. 1988).  It determines in accordance with section 9(a) of the NLRA, whether an employer is required to bargain with a union that has been "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes," 29 U.S.C. § 159(a), or under the construction industry exception included in section 8(f) of the NLRA, 29 U.S.C. § 158(f), whether an employer and a union permissibly entered into a collective bargaining agreement with less than a majority of employees authorizing the union's representation. *Raymond F. Kravis Center for the Performing Arts, Inc., v. N.L.R.B*., 550 F.3d 1183, 1187-1189 (D.C. Cir. 2008), enforcing 351 N.L.R.B. 143, 182 LRRM 1486 (2007); *Strand Theatre of Shreveport Corp. v. NLRB,* 493 F.3d 515, 518 (5th Cir.2007) (citing 29 U.S.C. § 158(f); *Nova Plumbing, Inc. v. NLRB,* 330 F.3d 531, 534 (D.C.Cir.2003)). The NLRA also vests the NLRB with primary jurisdiction to determine whether an employer has complied with its bargaining obligations consistent with the requirements of sections 8(a)(1) and (5) and 8(d), 29 U.S.C. 158(a)(1) and (5) and 158(d), whether a section 8(f) or 9 (a) union has complied with its bargaining obligations consistent with the requirements of sections 8(b)(3) and 8(d), 29 U.S.C. 158(b)(3) and 158(d), and over unfair labor practices committed by a union or employer. *See* 29 U.S.C. §158.

Section 8(a) of the NLRA states in pertinent part that "[i]t shall be an unfair labor practice for an employer-to interfere with…employees in the exercise of rights guaranteed in section 157 of this title[4]" and "to refuse to bargain collectively with the representative of his employees…"   29 U.S.C. §158(a)(1) and (5).  Section 8(b) of the NLRA states in pertinent part that "[i]t shall be an unfair labor practice for a labor organization or its agents-to refuse to bargain collectively with an employer provided it is the representative of his employees subject to" section 9(a) of the NLRA. 29 U.S.C. §158(b)(3). Section 8(d) of the NLRA, 29 U.S. C. §158(d), delineates the elements applicable to both an employer's and a union's duties to bargain collectively.

The Supreme Court has held that "[w]hen an activity is arguably subject to §7 or §8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board " and claims premised on such conduct are deemed to be preempted by the NLRA. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). *See also Lockridge,* 403 U.S. at 276. The Supreme Court has interpreted this to mean that "as a general rule, neither state nor federal courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to §  7 or §  8 of the Act.'" *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (emphasis added; and quoting *Garmon*, 359 U.S. at 245). *See also Morgan v. Massachusetts General Hosp.*, 901 F.2d 186, 194 (1st Cir.1990) ("as a general rule, the [NLRB] has 'exclusive jurisdiction to find, prevent, and rectify unfair labor practices' ") (quoting *New Mexico Dist. Council of Carpenters, AFL–CIO v. Mayhew Co.*, 664 F.2d 215 (10th Cir.1981);  and collecting cases). According to the

---

[4] Section 157 provides that employees have the right to bargain collectively through representatives of their own choosing, among other rights. 29 U. S. C. 157.

Supreme Court in *Garmon*, "courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board." *Garmon*, 359 U.S. at 244. A primary justification for the preemption doctrine is "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose." *Vaca*, 386 U.S. at 180–81, 87 S.Ct. at 912.

In order to grant Plaintiffs, Glynn, Welling, and Anderson, the relief they seek in this action, this Court will have to determine whether Local 11 was a duly certified bargaining representative under either section 8(f) or 9(a) of the NLRA for the stagehands who performed work for Martin Sports at Bruin Fan Fests events held on May 9, 12, 27, and 29, 2019, and whether Ms. Glynn's mere forwarding of the proposed collective bargaining agreement to Martin Sports was sufficient to demonstrate that it also complied with its obligation to bargain in good faith with Martin Sports as required by sections 8(b)(3) and 8(d) of the NLRA, 29 U.S. C. §§ 158(b)(3), 158(d), to achieve the alleged collective bargaining agreement. Thus, whether the alleged collective bargaining and trust agreements between Martin Sports and Local 11 are valid and enforceable poses issues pertaining to representation and good faith bargaining over which the NLRB has exclusive jurisdiction, among other issues. *See Lockridge*, 403 U.S. at 288-89; *Raymond F. Kravis Center for the Performing Arts, Inc.,* 550 F.3d at 1187-1189; *Strand Theatre of Shreveport Corp.,* 493 F.3d at 518-20; *Amalgamated Clothing & Textile Workers Union,* 845 F.2d at 1253 (noting that where "the [district] court could not possibly determine whether there has been a violation of the collective bargaining agreement without first deciding whether the union was elected as the

employees' bargaining representative," it should not exercise jurisdiction under section 301 of the LMRA (internal quotation marks omitted)). Therefore, for each of these reasons, the Court lacks subject matter jurisdiction to decide the merits of Plaintiffs' claims and these claims otherwise are barred or preempted by section 7 or 8 of the NLRA[5].  Accordingly, Plaintiffs' Complaint should be dismissed with prejudice.

**C.  Plaintiff Anderson has failed to state claims upon which relief may be granted for violations of Massachusetts Weekly Wage Act, Mass. Gen. Laws Chapter 149, Section 148, because these claims are barred or preempted by section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S. C. 185(a).**

Section 301(a) of the LMRA confers federal court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. 185(a). The Supreme Court initially held that the statute empowers federal courts to craft federal common law reasonably necessary to effectuate the objectives underlying its enactment. *See Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). This substantive authority to declare federal common law evolved into what is now described as an emerging jurisprudence of section 301 preemption. *See Martin v. Shaw's Supermarkets, Inc.,* 105 F.3d 40, 41-42 (1st Cir.) (recounting development of section 301 preemption), *cert. denied,* ___ U.S. ___, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997).

---

[5] Although there are there are three generally recognized exceptions to the NLRB's primary jurisdiction, none of these apply to Plaintiffs' claims.

The preemptive effect of Section 301 of the LMRA has broad application in employment-related matters. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210–13, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Lawless v. Steward Health Care System*, LLC, 894 F.3d 9, (1st Cir. 2018); *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012). The United States Supreme Court has consistently held that Section 301 of the LMRA preempts state law claims "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement." Caterpillar Inc. v. Williams, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting Int'l Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) ); Lueck, 471 U.S. AT 210–13, 105 S.Ct. 1904, 85 L.Ed.2d 206 (ruling that state-law tort claim requiring interpretation of CBA was preempted); Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 102–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-406, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); and Livadas v. Bradshaw, 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)6.

The Supreme Court has opined that "purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement." *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 261, 114 S.Ct. 2239, 2248, 129 L.Ed.2d 203 (1994) (citation and internal quotation marks omitted).  It has cautioned that "not every dispute concerning employment, or tangentially involving a

---

[6] In *Livadas*, the Supreme Court determined that section 301 did not preempt the statutory wage claims at issue because there was no need to interpret the collective bargaining agreement since no dispute existed about the amount of wages owed—only whether, contrary to state law, these had been paid too late. *Livadas*, 512 U.S. at 124-25, 114 S.Ct. 2068.

provision of a collective-bargaining agreement, is preempted by [section] 301." *Lueck*, 471 U.S. at 211, 105 S.Ct. 1904. Section 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract," id. at 212, 105 S.Ct. 1904, and section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," *Livadas,* 512 U.S. at 123, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93.

According to the First Circuit, state-law claims that require "only consultation with the CBA," as opposed to "actual interpretation" of the CBA, "should not be extinguished." *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001). *See Cavallaro,* 678 F.3d at 7. However, the basic test remains as prescribed by *Lingle* and its progeny: section 301 preempts a state-law claim, whether founded upon a state statute or common law, if a court, will be required to interpret one or more provisions within the collective bargaining agreement to adjudicate the claim, i.e. the outcome of the  state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement. *Livadas,* 512 U.S. at 123, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93.

A state-law claim can "depend" on the "meaning" of a collective bargaining agreement in two ways: First, if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement, *see United Steelworkers v. Rawson,* 495 U.S. 362, 369, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990) ("[A] state-law tort action against an employer may be pre-empted by § 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement."); and second, if its resolution arguably hinges upon an interpretation of the collective bargaining agreement, *see Lueck,* 471 U.S. at 220, 105 S.Ct. 1904, 1916, 85

L.Ed.2d 206 (finding section 301 preemption "when resolution of a state-law claim is substantially dependent upon analysis of the term of an agreement made between the parties in a labor contract"). If a state-law claim depends on the meaning of the collective bargaining agreement in either of these ways — that is, under *Rawson*'s "duty" rubric or under *Allis-Chalmers*'s "interpretation" rubric — it is preempted. *Flibotte v. Pa. Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir.1997), *cert. denied,* 523 U.S. 1123, 118 S.Ct. 1806, 140 L.Ed.2d 945 (1998);

When there is no claim that the alleged collective bargaining agreement itself violates a state statute, *O'Brien v. Town of Agawam,* 350 F.3d 279, 285 n. 12 (1st Cir.2003), the First Circuit has continued to deem state regulations pertaining to payment of wages, wage rates, overtime, meal and rest breaks, days and time off, and other matters of an economic nature, like Plaintiff Anderson's claims against Defendants for violations of Massachusetts Weekly Wage Act, Mass. Gen. Laws Chapter 149, Section 148, as preempted by section 301 of the LMRA when these are intertwined with and/or "substantially dependent on analysis of a collective-bargaining agreement" and more than mere consultation of the CBA is required. *Cavallaro,* 678 F.3d at 7, citing *Adames v. Exec. Airlines, Inc.,* 258 F.3d 7, 12-16 (1st Cir. 2001) (Railway Labor Act preemption of provisions of Commonwealth law dealing with wages, overtime pay, maternity benefits, meal periods, days off, vacation, bonuses, and sick leave); *Vadino v. A. Valey Eng'rs,* 903 F.2d 253, 266 (3d Cir.1990).

The Massachusetts Weekly Wage Act, Mass. Gen. Laws ch. 149, § 148, requires an employer to pay wages owed to an employee within a fixed period. To prevail with respect to this type of claim, an employee must, among other things, prove that there are wages owed

and the amount of the wages owed. *Stanton v. Lighthouse Fin. Servs., Inc.,* 621 F.Supp.2d 5, 10 (D.Mass.2009).

Plaintiff Anderson cannot prevail with respect to his claims against Defendants for violations of Massachusetts Weekly Wage Act, Mass. Gen. Laws ch. 149, § 148, without proving both (1) that Exhibit B is an enforceable collective bargaining agreement between Martin Sports and Local 11[7] and (2) the wage rates applicable to and the total amount of wages alleged owed by Martin Sports to him and those he purports to represent under the terms of the alleged agreement. Interpretation of provisions in the alleged collective bargaining agreement pertaining to: wage rates; minimum daily work call of no less than eight (8) consecutive hours regardless of actual hours worked; the defined work week and overtime for work in excess of 8 hours during a work day and 40 hours during a work week; wage rates for work on Saturday, Sunday and holidays, for work beginning before 6:00 a.m. and during the hours between 12:00 a.m. and 8:00 a.m.; and wage rates applicable when there is a lay off and recall before an 8 hour rest period has elapsed; and meal periods, among others, will be necessary to determine alleged entitlement to wages, the applicable wage

---

[7] The claims of Plaintiffs, Glynn and Welling, under Sections 502 (a) (3) and 515 of ERISA, *see* 29 U.S.C. §§1132(a)(3) and 1145, also are dependent upon proof that Exhibit B is an enforceable collective bargaining agreement between Martin Sports and Local 11. *See* 29 U.S.C. § 1145. Hence, these are preempted by section 8 of the NLRA. Even if Plaintiffs had bases to assert claims under section 301(a), the Supreme Court has interpreted the statutory provision narrowly. According to the Court it embraces suits "filed *because a contract has been violated." Textron Lycoming Reciprocating Engine Div. v. UAW,* 523 U.S. 653, 657, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) (emphasis in original). Without an allegation that a collective bargaining agreement has been breached, section 301(a) is inapplicable as the predicate for exercise of jurisdiction. *Id.* at 658. In dicta, the Court explained that when jurisdiction is appropriately premised on section301(a), "[I]f, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense...." *Id.* (citations omitted).

rates, and the total amount of wages allegedly due to Plaintiff Anderson and those he purports to represent.  *See* Exhibit B to Plaintiff's Complaint, pp. 1-3.

Hence, Plaintiff Anderson's claims against Defendants for violations of Massachusetts Weekly Wage Act, Mass. Gen. Laws ch. 149, § 148 "depend" on the "meaning" of the alleged collective bargaining agreement between Martin Sports and Local 11 in each of the two ways referenced above. First, these are based on alleged breaches of duties that arise pursuant to the alleged collective bargaining agreement between Martin Sports and Local 11. *See Rawson,* 495 U.S. at 369, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362.  Second, resolution of the claims arguably hinges upon an interpretation of the alleged collective bargaining agreement. *See Lueck,* 471 U.S. at 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206. Accordingly, Plaintiff Anderson's claims against Defendants for violations of Massachusetts Weekly Wage Act, Mass. Gen. Laws ch. 149, § 148 are preempted by section 301(a) and should be dismissed with prejudice. *Cavallaro,* 678 F.3d at 7-8; 1, 5;  *Adames,* 258 F.3d at 12-16;  *Flibotte, 131 F. 3d at* 26-28;  *Teixeira v. Quality Beverage LTD. Partnership*, 351 F.Supp. 3d 188, 192-193 (D. Mass. 2019).

## IV. CONCLUSION AND RELIEF

Defendants respectfully request that the Court grant their Motion for Dismissal of Plaintiffs' Complaint  and that it enter an Order and Judgment dismissing Plaintiffs' claims with prejudice and awarding to Defendants pursuant 28 U.S.C. §1927 and Fed.R.Civ. P. 11 all costs and attorneys' fees they have incurred in defense of this action because Plaintiffs' action has been brought and maintained in violation of this statute and court rule.

Respectfully Submitted,

*/s/John F. Welsh*
John F. Welsh
BBO#522640
Bello Welsh LLP
125 Summer Street, Suite 1200
Boston, MA 02110
Main: (617) 247-4100
Direct: (617) 247-8476
Fax: (617) 247-4125
jwelsh@bellowelsh.com

*/s/ Raymond Carey*
Ray Carey (P33266)
GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.
Attorneys for Defendants
30500 Northwestern Highway, Ste.425
Farmington Hills, MI 48334
(248) 865-0001
Dated: February 3, 2020    Rjcarey@gmgmklaw.com


**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the attached document was served on February 3, 2020, upon all parties and/or attorneys of record in this matter at their respective addresses as disclosed by pleadings in this mater via ECF Filing.

*/s/ Randi Donegan*
Randi Donegan