# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**COLLEEN A. GLYNN,**
**CHRISTOPHER P. WELLING**
in their capacity as Trustees and
Fiduciaries of ERISA Plans,

and **DOUGLAS C. ANDERSON,**
on his own behalf and on behalf
of others similarly situated,

Case No. 1:19-cv-12189-IT

                    Plaintiffs,

vs.

**MARTIN SPORTS & ENTERTAINMENT, LLC,**
**DAVID MARTIN** and **THERESA MARTIN,**

                    Defendants.

---

### DECLARATION OF DAVID MARTIN

1.      I, David Martin, am the owner, sole member, and chief executive officer of Martin Sports and Entertainment, LLC ("Martin Sports"), and in this capacity, I have personal knowledge of the matters articulated below.

2.      Martin Sports is a Michigan limited liability corporation engaged in the sports promotion business. It conducts sports promotion events for various professional sports teams which are its customers at various locations around the county.

3.      I am the sole member or owner and President and CEO of Martin Sports.

4.      My wife, Theresa Martin, is an administrative assistant for Martin Sports.  She is not a member, owner or officer of the company.

5.      Martin Sports does not employ on a permanent basis its own hourly paid work force for installation and removal of stages and other equipment used for its sports promotion events at various locations around the county. Instead, it typically retains stagehands and other labor for this purpose on a casual and event by event basis. They are recruited by Martin Sports through help wanted advertisements or referred to it by various local unions around the county which are affiliated with International Alliance of Theatrical Stage Employees ("IATSE") and with which Martin Sports has established referral relationships.

6.      Theresa Martin assists with scheduling and retention of such labor.

7.      IATSE affiliated unions have typically referred stagehands and other labor to Martin Sports for its events on a casual and event by event basis at regular or straight time hourly wage rates without a requirement that Martin Sports bargain over, enter into, or abide by the terms of collective bargaining agreements with the local unions.

8.      On May 9, 12, 27 and 29, 2019, Martin Sports produced Boston Bruins' Fan Fest events before the Boston Bruins' hockey playoff home games.

9.      Consistent with past practice between Martin Sports and IATSE affiliated unions, my wife, Theresa Martin, contacted Colleen Glynn, a business agent for IATSE Local

11, and requested that the Local refer crews to install and remove stages needed for the Boston Bruins' Fan Fest events held on May 9, 12, 27 and 29, 2019.

10.    During late morning on May 9, 2019, Ms. Glynn sent what she described as a "standard one time agreement," a copy of which was attached as Exhibit B to Plaintiffs' Complaint, to my wife for her to sign ostensibly as confirmation of the referral arrangement between Martin Sports and Local 11 for the May 9, 2019 Fan Fest event.

11.    Theresa signed the agreement and returned it to Ms. Glynn during early afternoon on May 9, 2019, without my knowledge or authorization and although I had not reviewed or accepted any terms of the agreement as Martin Sports' owner.

12.    Crews allegedly referred by Local 11 to Martin Sports performed the Bruin Fan Fest stage installations and removals on May 9, 12, 27, and 29, 2019.

13.    None of the crew members allegedly referred by Local 11 for installation and removal of stages for the Boston Bruins Fan Fests on May 9, 12, 27, and 29, 2019, provided Martin Sports with contact information and timesheets of any kind pertaining to their work hours. This information presumably was retained by Local 11 or its payroll company, Art Payroll.

14.    On May 20, 2019, Martin Sports was sent an invoice from Art Payroll in the amount of $24, 581.86 for the May 9 and 12, 2019 Bruin Fan Fest stage installations and removals. The invoice disclosed that Martin Sports was billed for excessive contributions to Local 11 fringe benefit plans and for excessive wages attributed to work allegedly performed by crew members allegedly referred by Local 11; that it was billed for many alleged work hours at one and a half or double the regular wage rates applicable to the various job

classifications; and that it was billed for many hours when stagehands did not actually perform work.

15.     In particular, contrary to what Theresa Martin requested on May 8, 2019, for work performed on May 9, 2019, Art Payroll billed Martin Sports for: 4 stagehands who purportedly worked at straight time wage rates for 8 hours; 4 who purportedly worked at straight time wage rates for 6 hours and 2 hours at double time; and 6 who purportedly worked at straight time wage rates for 14 hours and double time for 2 hours. Martin Sports was erroneously billed for 160 work hours instead of the 104 work hours needed for the May 9, 2019 stage installation and removal.

16.     The May 20, 2019 invoice also evinced, contrary to what Theresa Martin requested on May 10-11, 2019, for work performed on May 12, 2019, that Art Payroll billed Martin Sports for 12 people who purportedly worked 8 hours at time and a half and 4 people who purportedly worked 16 hours at time and a half. Martin Sports was erroneously billed for 240 hours instead of the 80 to 90 hours needed for the May 12, 2019 stage installation and removal.

17.     On June 4, 2019, Martin Sports was sent an invoice from Art Payroll in the amount of $10,794.09 for the May 27 and 29, 2019 Fan Fest stage installations and removals. The invoice disclosed that Martin Sports was billed for excessive contributions to Local 11 fringe benefit plans and for excessive wages attributed to work allegedly performed by crew members allegedly referred by Local 11; that it was billed for many alleged work hours at one and a half or double the regular wage rates applicable to the various job classifications; and that it was billed for many hours when stagehands did not actually perform work.

18.     In particular, contrary to what Theresa Martin requested on May 25, 2019, for

work performed on May 27, 2019, Art Payroll billed Martin Sports for: 2 stagehands who purportedly worked at time and a half for 5 hours and 5 who purportedly worked at time and a half for 9 hours. Martin Sports was erroneously billed for 82.5 hours instead of the 63 hours needed for the May 27, 2019 stage installation and removal.

19.     The June 4, 2019 invoice also evinced, contrary to what Theresa Martin requested on May 28-29, 2019, for work performed on May 29, 2019, that Art Payroll billed Martin Sports for: 5 stagehands who purportedly worked at time and a half for 4 hours and 5 who purportedly worked at straight time wage rates for 8 hours. Martin Sports was erroneously billed for 70 hours instead of the 63 hours needed for the May 29, 2019 stage installation and removal.

20.     I asked my wife send notice to Local 11 on June 4, 2019, that Martin Sports was terminating the alleged agreement sent by Ms. Glynn to my wife on May 9, 2019.  The notice was sent because I never authorized my wife to sign and I did not accept the terms of the alleged collective bargaining agreement; I was not allowed to bargain over the terms of the alleged agreement as the owner of Martin Sports; Local 11 or Art Payroll overcharged Martin Sports for costs of labor contrary to  communications between my wife and Ms. Glynn and Martin Sports' understanding of and expectations related to the referral arrangement with Local 11; and Local 11 and/or Art Payroll refused to provide invoices to Martin Sports for costs of labor that comport with Martin Sports' understanding of and expectations related to the referral arrangement with Local 11.

**David Martin** states under the penalty of perjury that the foregoing is true and correct.

_____

**David Martin**

Executed on January 27, 2020