## UNTIED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

```
*********************************************
                                             *
COLLEEN A. GLYNN, CHRISTOPHER P. WELLING      *
                                             *
      In their capacity as Trustees and      *
      Fiduciaries of ERISA Plans             *
                                             *
and                                          *
                                             *
DOUGLAS C. ANDERSON,                         *
                                             *
      On his own behalf and on behalf        *   Case 1:19-cv-12189-IT
      of others similarly situated,          *
                                             *
      Plaintiffs,                            *
                                             *
vs.                                          *
                                             *
MARTIN SPORTS & ENTERTAINMENT, LLC,          *
DAVID MARTIN and THERESA MARTIN,             *
                                             *
      Defendants.                            *
                                             *
*********************************************
```

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Now come Plaintiffs Colleen A. Glynn (as Trustee and Fiduciary), Christopher P. Welling (as Trustee and Fiduciary) and Douglas C. Anderson, on his own behalf and on behalf of others similarly situated and pursuant to Rule 56 of the Federal Rules of Civil Procedure and consistent with Local Rule 56.1 hereby respectfully move for summary judgment on all their claims.

As grounds for their motion and as explained in the accompanying memorandum, Plaintiffs state that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*.

Accompanying this motion are true and accurate copies of the following documents:

**Exhibit A** - *Affidavit of Colleen A. Glynn in Support of Plaintiffs' Motion for Summary Judgment*

**Exhibit B** – Exhibits C & D to the Complaint

**Exhibit C** – Exhibit A to *Plaintiffs' Local Rule 26.1(b) Disclosures* (itemization of all economic loss and computation of damages

### CONCISE STATEMENT OF MATERIALS FACTS NOT IN DISPUTE

At all times material, Colleen A. Glynn ("Glynn") was the Business Manager of IATSE, Local 11 ("Local 11"). In that capacity, she was responsible for and had oversight over the day-to-day operation of Local 11, including the operation of the Local 11 Hiring Hall from which stagehands who perform work covered by Local 11 collective bargaining agreements were referred. *Affidavit of Colleen A. Glynn in Support of Plaintiffs' Motion for Summary Judgment*, ¶1.

Local 11 has numerous collective bargaining agreements covering worked performed in venues such as the Citizen Bank Opera House, The Boch Wang Theatre, T.D Garden, Gillette Stadium, etc.  Local 11 also enters into collective bargaining agreements under which stagehands will be referred to provide stagehand work to presenters that do not have a regular presence within the jurisdiction of Local 11.  Local 11 refers to these agreements as "One-Time Agreements," although, in many instances, such agreements apply to multiple performances by the presenter. *Id.* at ¶2.

In August 2018, Glynn was contacted by Theresa Martin ("Martin") regarding providing labor for an event in Weymouth relating to the Boston Bruins.  Martin identified herself as the Vice President of Martin Sports. The event was to be held on August 24, 2018.  At Martin's request, Glynn forwarded to her the "Contract Between Martin Sports and The International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts I.A.T.S.E. Local 11." The cover page also stated, "Agreement between IATSE Local 11 and

2

Martin Sports August, 2018." That draft of the contract, among other things, provided for an 8-hour minimum. At Martin's request, Glynn subsequently forwarded to her the same contract except that the second contract provided for only a 4-hour minimum. That contract, which repeatedly identified Martin Sports as the "Employer," ultimately, was executed by Martin Sports President, David Martin, via an electronic signature. *Id.* at ¶3 & *Exhibit 1*.

Local 11 referred stagehands for the August 24, 2018 event. Martin Sports was invoiced for the cost of the labor, as per the executed contract, by American Residuals & Talent, Inc. ("ART"), a payroll company selected by Martin Sports; Martin Sports paid the invoices; and ART, subsequently paid the Local 11-referred employees as well as the respective benefit plans. *Id.* at ¶4. In May 2019, Glynn again was contacted by Martin. In that conversation, Martin informed Glynn that Martin Sports needed stagehands to do the stage installation and related work associated with Martin Sports' production of Boston Bruins' Fan Fests in Boston starting May 27, 2019 and continuing through 2019. *Id.* at ¶5.

Glynn again discussed generally with Martin how the referral process would work, including the fact that Martin Sports would sign a "Standard One-Time Agreement" setting out the terms and conditions under which the stagehands would work. Subsequently, on May 8, 2019, Glynn forwarded to Martin the "Contract Between Martin Sports and The International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts I.A.T.S.E. Local 11." The cover page also stated, "Agreement between IATSE Local 11 and Martin Sports 2019." Martin signed the contract as VP of Martin Sports. At no point did Martin inform Glynn that she was not the Vice President of Martin Sports nor did she ever indicate that she lacked authority to sign the contract on Martin Sports' behalf. As in the case of the August 2018 contract,

the 2019 contract expressly and repeatedly referred to Martin Sports as the "Employer" and identified and designated ART as the "Payroll Company." *Id.* at ¶6 & *Exhibit 2*.

As indicated in the header of the document, *i.e.*, Agreement between IATSE, Local 11 and Martin Sports 2019, and consistent with Glynn's discussions with Martin, the agreement was to apply to the Fan Fests to be produced by Martin Sports during 2019, including the Fan Fests scheduled for May 9, 12, 27 and 29, June 6 and 12, and October 12 and 14, 2019. *Id.* at ¶7.

At the request of Martin Sports, Local 11 stagehands were referred to Martin Sports on May 9, 12, 27 and 29; and the stagehands performed the stagehand work needed for Martin Sports to produce the Boston Bruins' Fan Fests on those dates. *Id.* at ¶8. Regarding the May 9th and May 12th Fan Fests, Glynn initially was informed that both events would be handled through two work calls, *i.e.*, a load in and set-up call on May 9th and a load out call after the May 12th event. However, Glynn subsequently was contacted by Martin who indicated that, as per the Boston Police, she needed additional referrals to do a load out after the May 9th event and an additional call for the load in and set up for the May 12th event. The order of the Boston Police had the effect of significantly increasing the cost of the Local 11-referred labor. *Id.* at ¶9 & *Exhibit 3*.

Prior to the May 27th work call, Glynn spoke with Martin regarding the fact that May 27 was a holiday, which would have required Martin Sports to pay a premium to the stagehands who worked on that date. During that conversation, Glynn agreed to waive the holiday pay provision for the May 27th work call, reduced the minimum hours from 8 to 5 for the load in and from 8 to 4 for the load out, and reduced the benefit package, all to align the costs of the calls to the $5,000 budget Martin announced. Glynn emailed Martin an estimate of the cost of the labor that reflected the impact of the concessions. *Id.* at ¶10 & *Exhibit 4*.

On May 28, 2019, Glynn received an email from Martin requesting additional concessions, *i.e.*, changing the minimum call from 8 hours to 4 hours and waiving the 8-hour period between calls. Later that day, Glynn sent Martin an email stating, in part, that Local 11 would waive the 8 hour turn around and invoice the load out as 4 hours at time and one half. Glynn again also emailed Martin an estimate of the cost of the labor for the May 29th event. *Id.* at ¶11 & *Exhibit 5*.

Stagehands referred from the Local 11 Hiring Hall worked for Martin Sports in association with the May 29th Boston Bruins' Fan Fest. After the load in and set up on May 29, Martin sent Glynn another email indicating that Martin Sports wanted further concessions. Glynn did not respond to that email as Local 11 already had made substantial concessions for Martin Sports. Other than the concessions Glynn made regarding the May 27th and 29th work calls, Glynn never agreed to contract terms other than the terms set out in the contract. *Id.* at ¶12.

Martin Sports was invoiced by ART for the labor provided by Local 11 referrals for the May 27th and 29th events. The total of that invoice was virtually identical to the sum of the two estimates that I had provided Martin in advance of the events. *Id.* at ¶13. Even though Martin Sports had the benefit of the work of Local 11-referred stagehands, Martin Sports never paid the stagehands any amount for their services rendered for the May 9, 12, 27 and 29 Boston Bruins Fan Fests. *Id.* at ¶15.

### LOCAL RULE 7.1 CERTIFICATION

Counsel have conferred regarding the filing of the respective Cross Motions for Summary Judgment.

                    Respectfully submitted,

                    For the Plaintiffs,

                    **COLLEEN GLYNN, CHRISTOPHER WELLING AND DOUGLAS C. ANDERSON**,

                    By their Attorney,

                    /*Gabriel O. Dumont, Jr*./
                    Gabriel O. Dumont, Jr., BBO#137820
                    FEINBERG, DUMONT & BRENNAN
                    177 Milk Street, Suite 300
                    Boston, MA 02109
                    (617) 338-1976
                    Cell (617) 733-4804
March 7, 2022        gd@fdb-law.com