UNTIED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

*********************************************************
**COLLEEN A. GLYNN, CHRISTOPHER P. WELLING**

    In their capacity as Trustees and
    Fiduciaries of ERISA Plans

and

**DOUGLAS C. ANDERSON**,

    On his own behalf and on behalf
    of others similarly situated,

    Plaintiffs,

vs.

**MARTIN SPORTS & ENTERTAINMENT, LLC**,
**DAVID MARTIN and THERESA MARTIN**,

    Defendants.
*********************************************************

Case 1:19-cv-12189-IT

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF ANDERSON'S MOTION TO CERTIFY CLASS OF SIMILARLY SITUATED FORMER EMPLOYEES OF DEFENDANTS OR IN THE ALTERNATIVE TO ADD THOSE EMPLOYEES AS PLAINTIFFS**

INTRODUCTION.

On four days in May 2019, forty-four individuals performed services for Martin Sports & Entertainment, LLC ("Martin Sports") associated with Martin Sports' presentation of the for-profit Boston Bruins' Fan Fest. Martin Sports failed to pay a single dollar to any of these individuals and similarly failed to pay any contributions on their behalf to three ERISA employee benefit funds, *i.e.*, Pension Fund of Local No. 11, I.A.T.S.E., International Alliance of Stage Employees Local

1

11 Section 401(k) Plan, and IATSE Local 11 Joint Apprentice Committee Educational Fund. Since there is no factual dispute that Martin Sports failed to pay the individuals who performed services for the company and similarly failed to make contributions on their behalf to the ERISA plans, Plaintiffs have moved for summary judgment on their claims.

In addition, since none of the employees who were referred by IATSE, Local 11 and who performed services for Martin Sports in May 2019 were paid, those former employees are "similarly situated" with Douglas C. Anderson within the meaning of Massachusetts General Laws Chapter 149, §150; and, as such, Plaintiff Anderson respectfully requests that the Honorable Court certify him as the representative of those former employees and that the Court grant the former employees similar relief, *i.e.*, the wages unpaid by Martin Sports.

**FACTUAL BACKGROUND.**

At all times material, Colleen A. Glynn ("Glynn") was the Business Manager of IATSE, Local 11 ("Local 11"). In that capacity, she was responsible for and had oversight over the day-to-day operation of Local 11, including the operation of the Local 11 Hiring Hall from which stagehands who perform work covered by Local 11 collective bargaining agreements were referred. *Affidavit of Colleen A. Glynn in Support of Plaintiffs' Motion for Summary Judgment*, ¶1.

Local 11 has numerous collective bargaining agreements covering worked performed in venues such as the Citizen Bank Opera House, The Boch Wang Theatre, T.D Garden, Gillette Stadium, etc.  Local 11 also enters into collective bargaining agreements under which stagehands will be referred to provide stagehand work to presenters that do not have a regular presence within the jurisdiction of Local 11.  Local 11 refers to these agreements as "One-Time Agreements," although, in many instances, such agreements apply to multiple performances by the presenter. *Id.* at ¶2.

In August 2018, Glynn was contacted by Theresa Martin ("Martin") regarding providing labor for an event in Weymouth relating to the Boston Bruins. Martin identified herself as the Vice President of Martin Sports. The event was to be held on August 24, 2018. At Martin's request, Glynn forwarded to her the "Contract Between Martin Sports and The International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts I.A.T.S.E. Local 11." The cover page also stated, "Agreement between IATSE Local 11 and Martin Sports August, 2018." That draft of the contract, among other things, provided for an 8-hour minimum. At Martin's request, Glynn subsequently forwarded to her the same contract except that the second contract provided for only a 4-hour minimum. That contract, which repeatedly identified Martin Sports as the "Employer," ultimately, was executed by Martin Sports President, David Martin, via an electronic signature. *Id.* at ¶3 & *Exhibit 1*.

Local 11 referred stagehands for the August 24, 2018 event. Martin Sports was invoiced for the cost of the labor, as per the executed contract, by American Residuals & Talent, Inc. ("ART"), a payroll company selected by Martin Sports; Martin Sports paid the invoices; and ART, subsequently paid the Local 11-referred employees as well as the respective benefit plans. *Id.* at ¶4. In May 2019, Glynn again was contacted by Martin. In that conversation, Martin informed Glynn that Martin Sports needed stagehands to do the stage installation and related work associated with Martin Sports' production of Boston Bruins' Fan Fests in Boston starting May 27, 2019 and continuing through 2019. *Id.* at ¶5.

Glynn again discussed generally with Martin how the referral process would work, including the fact that Martin Sports would sign a "Standard One-Time Agreement" setting out the terms and conditions under which the stagehands would work. Subsequently, on May 8, 2019, Glynn forwarded to Martin the "Contract Between Martin Sports and The International Alliance

of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts I.A.T.S.E. Local 11." The cover page also stated, "Agreement between IATSE Local 11 and Martin Sports 2019." Martin signed the contract as VP of Martin Sports. At no point did Martin inform Glynn that she was not the Vice President of Martin Sports nor did she ever indicate that she lacked authority to sign the contract on Martin Sports' behalf. As in the case of the August 2018 contract, the 2019 contract expressly and repeatedly referred to Martin Sports as the "Employer" and identified and designated ART as the "Payroll Company." *Id.* at ¶6 & *Exhibit 2*.

As indicated in the header of the document, *i.e.*, Agreement between IATSE, Local 11 and Martin Sports 2019, and consistent with Glynn's discussions with Martin, the agreement was to apply to the Fan Fests to be produced by Martin Sports during 2019, including the Fan Fests scheduled for May 9, 12, 27 and 29, June 6 and 12, and October 12 and 14, 2019. *Id.* at ¶7.

At the request of Martin Sports, Local 11 stagehands were referred to Martin Sports on May 9, 12, 27 and 29; and the stagehands performed the stagehand work needed for Martin Sports to produce the Boston Bruins' Fan Fests on those dates. *Id.* at ¶8. Regarding the May 9th and May 12th Fan Fests, Glynn initially was informed that both events would be handled through two work calls, *i.e.*, a load in and set-up call on May 9th and a load out call after the May 12th event. However, Glynn subsequently was contacted by Martin who indicated that, as per the Boston Police, she needed additional referrals to do a load out after the May 9th event and an additional call for the load in and set up for the May 12th event. The order of the Boston Police had the effect of significantly increasing the cost of the Local 11-referred labor. *Id.* at ¶9 & *Exhibit 3*.

Prior to the May 27th work call, Glynn spoke with Martin regarding the fact that May 27 was a holiday, which would have required Martin Sports to pay a premium to the stagehands who worked on that date. During that conversation, Glynn agreed to waive the holiday pay provision

4

for the May 27th wor*k call, reduced the minimum hours from 8 to 5 for the load in and from 8 to 4 for the load out, and reduced the benefit package, all to align the costs of the calls to the $5,000 budget Martin announced. Glynn emailed Martin an estimate of the cost of the labor that reflected the impact of the concessions. *Id.* at ¶10 & *Exhibit 4*.

On May 28, 2019, Glynn received an email from Martin requesting additional concessions, *i.e.*, changing the minimum call from 8 hours to 4 hours and waiving the 8-hour period between calls. Later that day, Glynn sent Martin an email stating, in part, that Local 11 would waive the 8 hour turn around and invoice the load out as 4 hours at time and one half. Glynn again also emailed Martin an estimate of the cost of the labor for the May 29th event. *Id.* at ¶11 & *Exhibit 5*.

Stagehands referred from the Local 11 Hiring Hall worked for Martin Sports in association with the May 29th Boston Bruins' Fan Fest. After the load in and set up on May 29, Martin sent Glynn another email indicating that Martin Sports wanted further concessions. Glynn did not respond to that email as Local 11 already had made substantial concessions for Martin Sports. Other than the concessions Glynn made regarding the May 27th and 29th work calls, Glynn never agreed to contract terms other than the terms set out in the contract. *Id.* at ¶12.

Martin Sports was invoiced by ART for the labor provided by Local 11 referrals for the May 27th and 29th events. The total of that invoice was virtually identical to the sum of the two estimates that I had provided Martin in advance of the events. *Id.* at ¶13. Even though Martin Sports had the benefit of the work of Local 11-referred stagehands, Martin Sports never paid the stagehands any amount for their services rendered for the May 9, 12, 27 and 29 Boston Bruins Fan Fests. *Id.* at ¶15.

ARGUMENT.

A. The Court Should Certify Plaintiff Anderson as the Class Representative of the Former Local 11-Referred Employees Who Were Not Paid by Martin Sports.

In conjunction with Plaintiffs' Motion for Summary judgment, Plaintiff Anderson is moving for class certification. Moving for class certification in the context of cross motions for summary judgment is appropriate. *See, e.g., Martin v. 3PD, Inc.*, 2013 U.S. Dist. LEXIS 45753 (D. Ma. 2013). While the Wage Act provides a substantive right to bring a class proceeding, Rule 23 remains applicable. *See, e.g., Gammella v. P.F. Chang's China Bistro, Inc.*, 482 Mass. 1, 8-10 (2019). Assuming that class certification should be determined pursuant to Rule 23 of the Federal of Civil Procedure,[1] that Rule, in relevant part, states:

> Rule 23. Class Actions
> (a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law

---

[1] An argument could be made that, because the Massachusetts Wage Act provides a substantive right to bring a class action, the right to bring a class proceeding should be judged under the standards set out in Rule 23 of the Massachusetts Rules of Civil Procedure. However, as set out *infra*, under either Rule, the only issue is numerosity.

or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In the instant case, the proposed class are the Local 11-referred employees who provided services to Martin Sports during May 2019 but were not paid. The claims of each proposed member of the class are identical, except for the amount of damages; all the questions of law and fact relating to those claims are common to the class; and the adjudication of Plaintiff Anderson's Wage Act claim will, as a practical matter, be dispositive of the interests of the other members not parties to this case or would substantially impair or impede their ability to protect their interests. Accordingly, the only issue reasonably in dispute regarding Rule 23 class certification would be numerosity given that the members of the proposed class number forty-four.[2] However, this figure should be sufficient to satisfy numerosity. *See, e.g., Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3rd Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). This fact notwithstanding, if the Court determines that the number of individuals are not sufficiently numerous, Plaintiff Anderson asks that the Court allow the joinder of the additional remaining members of the proposed class to be joined as plaintiffs.

### B. Plaintiffs are Entitled to Judgment as a Matter of Law.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. As stated in

---

[2] Attach to this Memorandum is Exhibit A to *Plaintiffs' Local Rule 26.1(b) Disclosures*. Exhibit A contains the itemization of all economic loss and computation of damages in this matter. Exhibit A was derived from Exhibits C & D to the instant Complaint. These Exhibits are the itemized invoices for the work performed for Martin Sports in May 2019. Exhibit A contains the names and damages for the forty-four Local 11-referred employees who worked for Martin Sports in May 2019.

*Martin v. 3PD, Inc., supra*, "[a] dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party," and "[a] fact is material if it has the potential of determining the outcome of the litigation." *Farmers Insurance Exchange v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011).

There is no dispute that Martin Sports entered into a contract with Local 11; that the contract provided that Martin Sports would pay certain wages and make certain contributions to various ERISA employee benefit plans; that Local 11-referred employees provided services under the terms of the contract; and that Martin Sports failed to pay any of the wages required by the contract to the Local 11-referred employees and failed to make the required contributions to the employee benefit plans on behalf of the Local 11-referred employees.

Massachusetts General Laws, c. 149, §148, in part, states: "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week, or in the case of an employee who has worked for a period of less than five days, hereinafter called a casual employee, shall, within seven days after the termination of such period, pay the wages earned by such casual employee during such period, …"

In turn, Massachusetts General Laws, c. 149, §150, in part, states: "An employee claiming to be aggrieved by a violation of section[] … 148 … may, 90 days after the filing of a complaint with the attorney general, or sooner if the attorney general assents in writing, and within 3 years after the violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and

for any lost wages and other benefits …. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees."

Accordingly, since there is no dispute that Martin Sports failed to pay Plaintiff Anderson and the other members of the class wages earned by them, Plaintiff Anderson, and the other members of the class of Local 11-referred employees, are entitled to judgment as a matter of law against Martin Sports, its President, David Martin, and its agent, Theresa Martin, for treble the amount of the unpaid wages plus attorney's fees and the cost of litigation.

In addition, ERISA §515, 29 U.S.C. §1145, states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." In turn, ERISA §502(g)(2), 29 U.S.C. §1132(g)(2), states: "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate."

Accordingly, since there is no dispute that Martin Sports failed to make the contributions required under the contract to the Pension Fund of Local No. 11, I.A.T.S.E., International Alliance

of Stage Employees Local 11 Section 401(k) Plan, and IATSE Local 11 Joint Apprentice Committee Educational Fund, these ERISA plans are entitled to judgment against Martin Sports in the amount of the unpaid contributions, plus interest, liquidated damages, costs and attorneys' fees.

### CONCLUSION.

For the reasons stated above in detail Plaintiff Anderson requests that the Court grant his Motion to Certify the Class comprised of the Local 11-referred employees who provided services for Martin Sports; that the Court grant his Motion for Summary Judgment; and that the Court enter judgment for him and the members of the Class against Martin Sports, its President, David Martin, and its agent, Theresa Martin, for treble the amount of the unpaid wages plus attorney's fees and the cost of litigation. Further, for the reasons stated above, Trustees Colleen A. Glynn and Christopher Welling request that the Court grant their Motion for Summary Judgment; and that the Court enter judgment for them as Trustees and Fiduciaries against Martin Sports in the amount of the unpaid contributions to the Pension Fund of Local No. 11, I.A.T.S.E., International Alliance of Stage Employees Local 11 Section 401(k) Plan, and IATSE Local 11 Joint Apprentice Committee Educational Fund, plus interest, liquidated damages, costs and attorneys' fees.

Respectfully submitted,
For the Plaintiffs,
**COLLEEN GLYNN, CHRISTOPHER WELLING AND DOUGLAS C. ANDERSON**,
By their Attorney,

/*Gabriel O. Dumont, Jr.*/
Gabriel O. Dumont, Jr., BBO#137820
FEINBERG, DUMONT & BRENNAN
177 Milk Street, Suite 300
Boston, MA 02109
(617) 338-1976; Cell (617) 733-4804
gd@fdb-law.com

March 7, 2022