UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLLEEN A. GLYNN, CHRISTOPHER P. WELLING, in their capacities as Trustees and Fiduciaries of ERISA Plans, and DOUGLAS C. ANDERSON, on his own behalf and on behalf of others similarly situated, Plaintiffs, v. MARTIN SPORTS & ENTERTAINMENT, LLC, DAVID MARTIN, and THERESA MARTIN, Defendants. | Civil Action No. 1:19-cv-12189-IT |

* * * * * * * * * * * * * * * * * * * * * * * *

MEMORANDUM & ORDER

March 22, 2023

TALWANI, D.J.

In this action, Plaintiffs Colleen Glynn and Christopher Welling, in their capacity as Trustees and Fiduciaries of certain employee benefit plans, bring a claim against Defendant Martin Sports & Entertainment, LLC ("Martin Sports") alleging delinquent contributions under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA") ("the ERISA Claim"). Plaintiff Douglas Anderson, on his own behalf and on behalf of others similarly situated, brings a claim against David Martin and Theresa Martin (collectively, the "Individual Defendants") and Martin Sports for failure to pay wages pursuant to Mass. Gen. Laws ch. 149, §148 ("Wage Act") (the "Wage Claim").

For the reasons that follow, Anderson's Motion to Certify the Class or in the Alternative to Add Forty-Three Additional Plaintiffs [Doc. No. 57] is GRANTED, Defendants' Motion for

Summary Judgment [Doc. No. 54] is DENIED, and Plaintiffs' Motion for Summary Judgment [Doc. No. 55] is GRANTED as to Martin Sports and David Martin and DENIED as to Theresa Martin.

## I.    Background

In the related action, International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts, Local No. 11 v. Martin Sports & Entertainment, LLC, 19-cv-12579, the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts, Local No. 11 ("Local 11") claims that Martin Sports breached a collective bargaining agreement entered into pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The court consolidated the two matters for summary judgment briefing and adopts in full the Background set forth in the court's Memorandum & Order [Doc. No. 60].

## II.    Discussion

The court addresses first Defendants' challenge to Plaintiffs' standing, then Anderson's motion for class certification or joinder, then Individual Defendants' further arguments on summary judgment, and finally Plaintiffs' motion for summary judgment.

### A.  *Defendants' Challenge to Plaintiffs' Standing*

Defendants contend that Plaintiffs are not the real parties in interest where Local 11 has paid ART the amounts ART invoiced Martin Sports for work performed by Local 11-referred workers. Defs.' Brief in Supp. of Mot. for Summ. J. ("Defs.' Brief in Supp.") 17 [Doc. No. 54-1].

1. Statement of Law

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2, cl. 1; Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560–61 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560–61). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)). "The same principle applies when there are multiple plaintiffs. At least one plaintiff must have standing to seek each form of relief requested in the complaint." Town of Chester, N.Y. v. Laroe Ests., Inc., 198 L. Ed. 2d 64, 137 S. Ct. 1645, 1651 (2017).

To establish injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731–32 (1st Cir. 2016).

"[P]rudential considerations 'ordinarily require a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law

invoked.'" Culhane v. Aurora Loan Servs. Of Neb., 708 F. 3d 282, 290 (1st Cir. 2013) (quoting Pagán, 448 F.3d at 27).

    2.  The ERISA Claim

"Under § 502(a)(3), a civil action may be brought [by a participant, beneficiary, or fiduciary] '[(A)] to enjoin any act or practice which violates any provision of . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan.'" O'Shea through O'Shea v. UPS Ret. Plan, 837 F.3d 67, 78 (1st Cir. 2016) (citing 29 U.S.C. § 1132(a)(3)). "Section 515 of ERISA provides that '[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.'" Mandarini v. Accurate Engineered Concrete, Inc., 433 F. Supp. 3d 186, 194 (D. Mass. 2019) (citing 29 U.S.C. § 1145).

    As fiduciaries may bring claims under §§ 502(a)(3) and 515, the court finds that Trustee Plaintiffs are parties in interest.

    Defendants contend that no injury exists where, consistent with the 2019 Agreement and related trust agreement, ART tendered all contributions due to ERISA plans sponsored by Local 11 for work performed by Local 11-referred workers for Martin Sports on May 9, 12, 27, and 29, 2019. Defs.' Brief in Supp. 16 [Doc. No. 54-1]. This argument does not hold water. There is no dispute that Martin Sports was obligated under the 2019 Agreement and related trust agreement to make contributions related to the work performed by the Local 11-referred employees and that Martin Sports failed to make those contributions. SOMF, Defs.' Mot. for Summ. J. ¶¶ 7.C & 7.F [Doc. No. 54]. That Local 11 stepped up to ensure that workers would be credited in benefit

plans for the hours of work performed may give Local 11 a claim against Trustee Plaintiffs for amounts they recover, but does not relieve Martin Sports of its contractual obligations under the 2019 Agreement and related trust agreement where Martin Sports has no right to such an offset from Local 11.

Accordingly, the court finds that Trustee Plaintiffs have standing with respect to their claim for unpaid contributions under §§ 502(a)(3) and 515 of ERISA in connection with the work performed in May 2019.

### 3. The Wage Claim

Defendants contend that Anderson's claim for unpaid wages under the Wage Act fails as a matter of law for the same reasons as Trustee Plaintiffs' claim: that Anderson lacks standing and is not a real party in interest, and there is no justiciable case or controversy, where Local 11 paid ART the amount invoiced so that ART could tender Local 11 members' wages for work they performed for Martin Sports on May 9, 12, 27, and 29, 2019. Defs.' Brief in Supp. 19 n.9 [Doc. No. 54-1].

"The purpose of the Wage Act is 'to protect employees and their right to wages,'" Electronic Data Sys. Corp. v. Attorney Gen., [454 Mass. 63] 907 N.E.2d 635 [641] (2009), by requiring employers to pay employees their wages 'in a timely fashion, according to the parameters set out in the statute.' Okerman v. VA Software Corp., [69 Mass.App.Ct. 771] 871 N.E.2d 1117 [1121] (2007)." Fine v. Guardian Life Ins. Co. of Am., 589 F. Supp. 3d 139, 150 (D. Mass. 2022) (quoting Parker v. EnerNOC, Inc., 484 Mass. 128, 139 N.E.3d 328, 333 (2020)). The Wage Act "requires an employer to pay an employee 'in full' by the date of discharge." Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 21 (1st Cir. 2018) (quoting Mass. Gen. Laws ch. 149, § 148). "This provision 'impose[s] strict liability on employers,' who must 'suffer

5

the consequences' of non-compliance regardless of their intent." Id. (quoting Dixon v. City of Malden, 464 Mass. 446, 984 N.E.2d 261 (2013)). While Local 11 may have a claim against Anderson or ART to recoup amounts Local 11 paid, Martin Sports is not absolved of its contractual or statutory obligations by virtue of Local 11's actions.

Accordingly, Anderson has standing with respect to his claim that Defendants violated the Wage Act by failing to pay him for work he completed for Martin Sports.

B. *Class Certification or Joinder*

Anderson moves to certify a class under Rule 23 comprised of the Local 11-referred employees who allegedly provided services to Martin Sports in May 2019 and were not compensated by Martin Sports for their services. Mot. 1 [Doc. No. 57]. Anderson moves in the alternative for permissive joinder under Rule 20 of the 43 Local 11-referred employees listed on the ART invoices for Martin Sports in May 2019. Id.

1. Rule 23 Overview

"Before certifying a class, the district court must undertake a careful review of whether the plaintiffs have met their burden of proving each Rule 23(a) factor and one of the Rule 23(b) requirements." Donovan v. Philip Morris USA, Inc., 268 F.R.D. 1, 8 (D. Mass. 2010) (citing Smilow v. Sw. Bell Mobile Sys. Inc., 323 F.3d 32, 38 (1st Cir. 2003)). "When the legal and factual premises of a case are disputed, 'the court may 'probe behind the pleadings,' to 'formulate some prediction as to how specific issues will play out' in order to assess whether the proposed class meets the legal requirements for certification.'" Id. (quoting In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 17 (1st Cir. 2008)). "Nevertheless, the class certification proceeding must not become 'a mini-trial on the merits.'" Id. (citing In re PolyMedica Corp. Securities Litig., 432 F.3d 1, 16 (1st Cir. 2005)). "Furthermore, '[t]he class

6

certification prerequisites should be construed in light of the underlying objectives of class actions.'" Id. (quoting Smilow, 323 F.3d at 41).

"The class action has both procedural and substantive purposes. It is designed to enable a large number of individuals to bring a single proceeding—plainly a more convenient way to deal with a controversy than advancing in a fragmentary fashion with multiple actions." Id. (citing 7A Charles Alan Wright, Arthur Miller, & Mary Kay Kane, Federal Practice and Procedure § 1751 (3d ed. 2005)). "The class action also serves the substantive goal of 'vindicat[ing] . . . the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" Id. (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617, 117 S. Ct. 2231 (1997) (alterations in original)). "It allows people to aggregate claims that would be too costly and time-consuming to bring individually." Id. (citing Smilow, 323 F.3d at 41).

2.  Rule 23(a)

a.  Rule 23(a)'s Requisites

Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if":

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Implicit in Rule 23 is the additional requirement that plaintiffs demonstrate by a preponderance of the evidence that the class is currently and readily

ascertainable based on objective criteria." <u>In re Nexium Antitrust Litig.</u>, 777 F.3d 9, 19 (1st Cir. 2015) (internal citation omitted).

  b.  Discussion

Anderson contends that "the claims of each proposed member of the class are identical, except for the amount of damages; all the questions of law and fact relating to those claim are common to the class; and the adjudication of [his] Wage Act claim will, as a practical matter, be dispositive of the interests of the other members not parties to this case or would substantially impair or impede their ability to protect their interests." Mem. in Supp. of Pls.' Mot. for Summ. J. and Pl. Anderson's Mot. 7 ("Pls.' Mem. in Supp.") [Doc. No. 56]. Defendants contend that Anderson has not satisfied any of the four requisite elements under Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Defs.' Brief in Supp. 11–15 [Doc. No. 59-1]. The court will address each of the four elements in turn.

  (1)  Numerosity

Defendants argue that Anderson has not shown that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Numerosity is a 'low threshold.'" <u>Fleming v. Select Portfolio Servicing</u>, 342 F.R.D. 361, 365 (D. Mass. 2022) (quoting <u>Garcia-Rubiera v. Calderon</u>, 570 F.3d 443, 460 (1st Cir. 2009)). "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." <u>Garcia-Rubiera</u>, 570 F.3d at 460 (quoting <u>Stewart v. Abraham</u>, 275 F.3d 220, 226–27 (3d Cir. 2001)).

Defendants contend that the putative class is limited to the 36 individuals who obtained a right to sue letter from the Office of the Attorney General for the Commonwealth of

8

Massachusetts. Even if this contention was correct, the action would not be precluded. While a showing of more than 40 potential plaintiffs generally meets the numerosity requirement, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action[.]" Id. "Where the potential class number is less than forty, federal courts 'have taken a more flexible approach to the numerosity analysis,'" considering subjective factors such as "the nature of the action" and "matters of judicial economy." Torrezani v. VIP Auto Detailing, Inc., 318 F.R.D. 548, 554 (D. Mass. 2017) (quoting In re Nexium (Esomeprazole) Antitrust Litigation, 296 F.R.D. 47, 51 (D. Mass. 2013)). Other factors considered are "the financial resources of proposed class members and their (the proposed class member's) ability to file individual suits." Id. "The focus of the inquiry remains whether joinder of all potential plaintiffs would be impracticable; impracticable does not mean that it would be impossible, rather it 'means only the difficulty or inconvenience of joining all members of the class.'" Id. (quoting McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust, 268 F.R.D. 670, 674 (W.D. Wash. 2010)).

In any event, under Mass. Gen. Laws. ch. 149, § 150, an employee who claims a violation of Mass. Gen. Laws ch. 149, §148, who has received a right to sue letter may bring suit "in his own name and on his own behalf, or for himself and for others similarly situated," with no requirement that each individual class member must also obtain a right to sue letter.

The court finds that joinder of the approximately 40 putative class members could pose an unwarranted inconvenience and burden on the court and parties and that the numerosity requirement has been met here.

(2)       Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common" to the proposed class. Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the claims at issue depend upon a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

Defendants contend that Anderson fails to establish commonality where each member of the putative class will have to provide individualized proof that she or he worked for Martin Sports on May 9, 12, 27 and/or 29, 2019, the numbers of hours he or she worked for Martin Sports on those dates, and the wage rates applicable. Defs.' Brief in Supp. 14 [Doc. No. 59-1]. But the days and number of hours worked and the hourly rate goes only to the question of damages. As to liability, the parties' principal dispute—whether Defendants did or did not sign on to the 2019 Agreement—does not turn on which of the four days in May 2019 the putative class members worked or what hourly rates apply.[1] "[W]age claims . . . are appropriate for class treatment [where] establishing liability for one employee necessarily establishes liability for the entire class." Garcia v. E.J. Amusements of New Hampshire, Inc., 98 F. Supp. 3d 277, 286 (D.

---

[1] Defendants' contention that they never received the contact information, social security numbers, Form W-4s, and other information related to the Local 11 referred employees who worked for them in May 2019, Defs.' Brief in Supp. 14 n.5 [Doc. No. 59-1], has no bearing on the liability inquiry where nothing in the record shows that Defendants either disputed or attempted to pay the related invoices provided by ART for the work covered by the 2019 Agreement.

Mass. 2015). Here, where the critical dispute in this case turns on common issues as to liability, the court finds that the commonality requirement has been met.

(3) Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008).

Defendants assert generally that "[t]ypicality is lacking when a class representative is subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation," Defs.' Brief in Supp. 12 n.4 [Doc. No. 59-1], but provide no specifics as to what defenses Anderson is subject to that other putative class members are not. The sole difference identified by the court between putative class members arises from the nature of the action and does not alter the court's analysis: the amount of damages sought differs depending on the number of hours each putative class member allegedly worked. Moreover—as Defendants point out—the difference in damages sought by each putative class member (including Anderson) is not significant. See id. at 20 ("[T]he amount in controversy as to each applicable Local 11 member is between approximately $600 and no more than $1,500 . . ."). Accordingly, the court finds that Anderson's claim is typical of the claims of the putative class members.

(4)     Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The analysis has two steps: The Court must determine, 'first, whether any potential conflicts exist between the named plaintiffs and the prospective class members, and, second, whether the named plaintiffs and their counsel will prosecute their case vigorously.'" In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. at 23 (quoting Guckenberger v. Boston Univ., 957 F.Supp. 306, 326 (D. Mass. 1997)).

Defendants contend that Anderson cannot satisfy the adequacy of representation element because (i) Anderson lacks standing to sue Defendants[2]; (ii) the evidence Anderson relies upon shows that he only performed work for Martin Sports on May 12, 2019 (and not the other dates at issue); and (iii) Anderson was not present for the other Bruins Fan Fests at issue. Defs.' Brief in Supp. 15 [Doc. No. 59-1]. The court reads Defendants' second and third points—that Anderson only claims to have worked one of the events at issue and that Anderson was not present at the others—as repacking Defendants' argument that Anderson's claim lacks commonality with respect to the claims of the putative class members. As noted above, where the parties' primary dispute concerns whether there was any applicable agreement at all, that Anderson may only have worked some of the days at issue and not all does not defeat commonality.

As to the first step of the adequacy analysis, Defendants have not identified a potential conflict between Anderson and the putative class members. As to the second step, Plaintiffs

_____

[2] As set forth above, the court has rejected the argument that Anderson lacks standing to bring his claim.

contend—and Defendants do not dispute—that Anderson's counsel, Gabriel O. Dumont of Feinberg, Dumont & Brennan, is qualified to pursue the case vigorously as he has practiced exclusively in the area of labor, employment, and employee benefits law since 1977. See Pl.'s Reply for Mot. for Class Certification ("Pl.'s Reply") 6 [Doc. No. 65].

Accordingly, the court finds that Anderson will adequately represent the interests of the putative class members.

### 3. Rule 23(b)

Rule 23(b) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if":

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P 23(b).

Anderson contends that while class certification under any part of Rule 23(b) is proper, certification under Rule 23(b)(1) or (2) is "most appropriate." Pl.'s Reply 6 [Doc. No. 65]. Defendants contend that class certification under Rule 23(b)(1) or (2) is not appropriate where Anderson and the putative class members predominately seek monetary damages as a remedy for the claims. Defs.' Brief in Supp. 16 [Doc. No. 59-1]. Defendants further contend that class certification under Rule 23(b)(3) is improper because individualized issues of liability and damages predominate over any common issues of fact and law. Id. at 19.

        a.   Rule 23(b)(1) and (2)

"It is doubtful that Rule 23(b)(1) certification is available in actions that seek monetary relief." Pimentel v. City of Methuen, 2019 WL 6699667, at *7 (D. Mass. Dec. 9, 2019). "The Supreme Court has previously suggested that there are due process concerns with Rule 23(b)(1) class suits seeking money damages." Id. (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985)). "More recently, in Wal-Mart Stores, Inc. v Dukes, it held that 'individualized monetary claims belong in Rule 23(b)(3)' because of the procedural protections that attend Rule 23(b)(3) certification." Id. (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362–63 (2011)). "It is true that Dukes 'was literally about a [Rule] 23(b)(2) class action,' and therefore the statements about Rule 23(b)(1) are formally dicta.'" Id. (citing 2 William B. Rubenstein, Newberg on Class Actions § 4:14 (5th ed.)). "However, the 'decision strongly suggests that monetary damages will rarely, if ever, be available in any non-opt-out class action, including those brought under 23(b)(1).'" Id. (citing 2 William B. Rubenstein, Newberg on Class Actions § 4:2 (5th ed.)).

Similarly, "Rule 23(b)(2) does not apply here because plaintiff seeks individualized money damages." Id., at *8 (citing Dukes, 564 U.S. at 360–61 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class . . . it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.")).

Accordingly, class certification under Rule 23(b)(1) and (2) is not appropriate here where Anderson does not seek injunctive or declaratory relief on behalf of himself or the putative class members but rather individualized monetary damages.

> b.   Rule 23(b)(3)

Rule 23(b)(3) has two elements: predominance and superiority. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Prinzo v. Hannaford Bros. Co., LLC, 2023 WL 1767516, at *2 (D. Mass. Feb. 3, 2023) (quoting Amchem Prod., Inc., 521 U.S. at 623, 117 S. Ct. 2231 (citing 7A Wright, Miller, & Kane 518–519.19)). "The predominance inquiry accordingly involves an individualized, pragmatic evaluation of the relationship between and the relative significance of the common and individual issues." Id. (quoting In re Relafen Antitrust Litig., 218 F.R.D. 337, 343 (D. Mass. 2003)). "Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." Id. (quoting Smilow, 323 F.3d at 40).

Similar to Defendants' argument that commonality is lacking under Rule 23(a)(3), Defendants contend that class certification under Rule 23(b)(3) is improper where each putative class member will need to prove that he or she performed work for Martin Sports, the number of hours worked, and the applicable wage rates. Defs.' Brief in Supp. 19 [Doc. No. 59-1]. However,

15

"Rule 23(b)(3) 'does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.'" In re Nexium Antitrust Litig., 777 F.3d at 21 (emphasis in original, quoting Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 469, 133 S. Ct. 1184, 1196 (2013)). "Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." Id. (citing Smilow, 323 F.3d at 40). In this case, the predominance requirement is satisfied where the sole question (and analysis) regarding Martin Sports's liability for alleged violations of Mass. Gen. Laws ch. 149, §148 is identical for all putative class members.

To the extent that Defendants' argument can be interpreted as one for lack of superiority under Rule 23(b)(3), it also fails. "The superiority inquiry [] ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" In re Solodyn (Minocycline Hydrochloride) Antitrust Litig., 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (quoting Amchem, 521 U.S. at 615, 117 S. Ct. 2231 (quoting advisory committee's note on Fed. R. Civ. P. 23)). Here, where the common questions predominate and the damages are easily calculated, the case is eligible for class certification, on fairness and efficiency grounds.

Accordingly, the putative class may be certified under Rule 23(b)(3). A Rule 23(b)(3) class requires notice to class members, and an opportunity to opt-out. Accordingly, the court considers further whether permissive joinder may be granted.

16

4.   Rule 20

Under Rule 20(a)(1) of the Federal Rules of Civil Procedure, "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Here, each of the individuals proposed for permissive joinder are asserting, through the same counsel, the same wage claim against Martin Sports, with common questions of law and fact as detailed above.[3] Accordingly, permissive joinder is also appropriate.

5.   Conclusion

For the forgoing reasons, Anderson's <u>Motion</u> [Doc. No. 57] is GRANTED as to both the request for class certification and the alternative request for leave to add 43 additional plaintiffs. The court is prepared (i) to certify a class comprised of the Local 11-referred employees who were identified on the ART invoices as having provided services for Martin Sports in May 2019 and who were not compensated by Martin Sports for their services, and to appoint Anderson's counsel, Gabriel O. Dumont, of Feinberg, Dumont & Brennan, as class counsel under Rule 23(g) or (ii) to allow counsel to file a Notice of Joinder under Rule 20 as to any of these individuals who seeks to opt in. If Anderson seeks to proceed as a class action, he shall promptly file a motion for notice to class members in accordance with Rule 23(c)(2)(B) setting forth, <u>inter alia</u>,

---

[3] Defendants contend that joinder of the additional plaintiffs under Rule 20 would defeat diversity jurisdiction under 28 U.S.C. § 1332 as the amount in controversy for each Local 11-referred employee is no more than $1,500. Defs.' Brief in Supp. 20 [Doc. No. 59-1]. However, the amount in controversy is irrelevant here where the court has jurisdiction over the wage claims under supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). <u>See</u> Compl. ¶ 8 [Doc. No. 1].

the proposed time and manner for opting out of the class. Alternatively, if counsel seeks to

proceed on behalf of these individuals by joinder, he shall file a Notice of Joinder identifying any

or all of the 43 individuals listed in the ART invoices as having provided services for Martin

Sports in May 2019 and who were not compensated by Martin Sports who are opting in to this

action.

     C.  *Individual Defendants and Plaintiffs' Cross Motions for Summary Judgment*

        1.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate

when "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under

the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st

Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving

party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied

in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-

moving party's claim or (2) by demonstrating that the non-moving party failed to establish an

essential element of its claim. Id. at 331.

Once the moving party establishes the absence of a genuine dispute of material fact, the

burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of

material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported

summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings."

Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotation marks omitted). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

The fact that the parties have filed cross motions does not alter these general standards; rather the court reviews each party's motion independently, viewing the facts and drawing inferences as required by the applicable standard, and determines, for each side, the appropriate ruling. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996) (noting that cross-motions for summary judgment do not "alter the basic Rule 56 standard" but rather require the court "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed").

2. Individual Defendants

Defendants David Martin and Theresa Martin contend that the Wage Claim against them should be dismissed where neither was a party to the 2019 Agreement, related trust agreement, or the agreement between ART and Martin Sports.

The Wage Act states in relevant part:

> The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section. Every public officer whose duty it is to pay money, approve, audit or verify pay rolls, or perform any other official act relative to payment of any public employees, shall be deemed to be an employer of such employees, and shall be responsible under this section for any failure to perform his official duty relative to the payment of their wages or salaries, unless he is prevented from performing the same through no fault on his part.

M.G.L. c. 149, § 148.

The Wage Act applies to David Martin as a matter of law where he is the President and CEO of Martin Sports.

As for Theresa Martin, while David Martin's first Declaration [Doc. No. 54-6] and Theresa Martin's Declaration [Doc. No. 54-7] provide that Theresa Martin was an administrative assistant for Martin Sports at the time each respective declaration was signed, the Declarations are silent as to the role Theresa Martin had in the company at the time the 2019 Agreement was entered into.[4] However, in her correspondence with Glynn in execution of the 2019 Agreement, Theresa Martin held herself out as "V.P." of Martin Sports. Moreover, the record shows that Theresa Martin negotiated the 2019 Agreement with Glynn, including details related to minimum hours requirements and overtime pay for the workers referred by Local 11 and who then performed work for Martin Sports. Thus, a fact finder could determine that she is an "agent[] having the management of" Martin Sports for purposes of the statute. See Theresa

---

[4] Theresa Martin's deposition testimony provides that she was never officially employed by Martin Sports and never held a title or position with Martin Sports. See Deposition of Theresa Martin ("Theresa Martin Dep."), Tr. 08:05–13; 11:23–12:02 [Doc. No. 54-8].

Martin Dep., Tr. 30:12–19 [Doc. No. 54-8] (Q: "Would you have any role in the reviewing and/or paying the invoice?" A: "I may have been directed to make payment or to arrange payment and or/notify -- it wouldn't be unusual for David to say, 'Can you send an email or notify someone that payment is process or has been sent.' That would not have been an unusual request.")

Accordingly, Defendants' Motion for Summary Judgment [Doc. No. 54] as to the Wage Claim against Individual Defendants is DENIED where David Martin is an employer under the Wage Act as a matter of law and a fact finder could conclude that Theresa Martin was an employer under the Wage Act based on the summary judgment record.

3. Plaintiffs' Motion for Summary Judgment

Plaintiffs contend that summary judgment is appropriate as to Trustee Plaintiffs' claims under ERISA §§ 502(a)(3) and 515 and Anderson's claim under the Wage Act where "there is no dispute that Martin Sports entered into a contract with Local 11; that the contract provided that Martin Sports would pay certain wages and make certain contributions to various ERISA employee benefit plans; that Local 11-referred employees provided services under the terms of the contract; and that Martin Sports failed to pay any of the wages required by the contract to the Local 11-referred employees and failed to make the required contributions to the employee benefit plans on behalf of the Local 11-referred employees." Pls.' Mem. in Supp. 8 [Doc. No. 56].

a. Evidence as to Economic Loss and Computation of Damages

Accompanying Plaintiffs' motion for summary judgment is: (i) the Affidavit of Collen A. Glynn in Support of Plaintiffs' Motion for Summary Judgment and related business records [Doc. No. 55-1]; (ii) ART payroll records related to the hours worked by Local 11 members for

Martin Sports on May 9, 12, 27, and 29, 2019 ("ART Payroll Records") [Doc. No. 55-2]; and (iii) Plaintiffs' Local Rule 26.1(b) Disclosures [Doc. No. 55-3], which provide itemization of economic loss and computation of damages related to the events at issue.

Defendants contend that Plaintiffs are not entitled to summary judgment because Plaintiffs' Motion for Summary Judgment [Doc. No. 55] is not properly supported with admissible deposition testimony or affidavits from witnesses with personal knowledge as required by Fed. R. Civ. P. 56(c)(1)(A) pertaining to: (A) whether each member of the putative class worked for Martin Sports on May 9, 12, 27, and/or 29, 2019; (B) the number of hours he or she worked for Martin Sports on one or multiple of those dates; and (C) the wage rates applicable to his or her performance for the work for Martin Sports on one or multiple of those dates. Defs.' Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Opp'n") ¶ 7 [Doc. No. 59]; Defs.' Brief in Supp. 4 [Doc. No. 59-1].[5]

Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

---

[5] To the extent that Defendants rely on the reasons put forth in their Motion for Summary Judgment [Doc. No. 54], see Defs.' Opp'n ¶ 7 [Doc. No. 59]; Defs.' Brief in Supp. 4 [Doc. No. 59-1], the court has rejected such arguments as a matter of law, except as to Theresa Martin where Defendants' motion was denied because of disputed material facts. As discussed above, this dispute precludes entry of judgment as to Theresa Martin.

support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). In sum, Rule 56(c)(1) provides what a party

disputing a fact must rely upon or show and, relevant here, does not limit the admissible

evidence to support a fact to deposition testimony or affidavits from individuals with personal

knowledge.

Defendants do not dispute that the ART Payroll Records appended to Plaintiff's motion

for summary judgment are the two invoices that ART sent to Martin Sports on May 20, 2019,

and June 4, 2019, for the worked performed by the Local 11 members on May 9 and 12, 2019,

and May 27 and 29, 2019, respectively. See Declaration of David Martin ¶¶ 14, 17 [Doc. No. 54-

6]. Thus, the ART invoices are admissible as non-hearsay[6] where they are not relied upon to

prove the hours worked and by whom, but to show that Martin Sports received the invoices and

was informed of the amounts set forth therein. Although Defendants now claim that Plaintiffs

must prove these hours through some additional evidence, Martin Sports did not dispute either

invoice with ART within 24 hours of receipt as required by Martin Sports's agreement with

ART. Nor did Martin Sports provide payment within 10 days of receipt of each invoice as

required by the 2019 Agreement.

Accordingly, the court finds that summary judgment in favor of Trustee Plaintiffs as to

the claims under §§ 502(a)(3) and 515 of ERISA, and in favor of Anderson, on his own behalf

and on behalf of the putative class members, as to the claims under Mass. Gen. Laws ch. 149,

§ 148 is proper in the amounts set forth in the ART generated invoices where Martin Sports

---

[6] "While an out-of-court statement may be hearsay if offered to prove the truth of the matter
asserted, it is nonhearsay if offered for some other purpose . . . " United States v. Colon-Diaz,
521 F.3d 29, 33 (1st Cir. 2008).

neither disputed the two invoices within the time required under Martin Sports's agreement with ART nor paid the two invoices within the time required under the 2019 Agreement.

> b. Amounts Due to the Trustee Plaintiffs

"In any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 . . . the court shall award the plan (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

According to the ART generated invoices, contributions due to ERISA plans sponsored by Local 11 for work performed by Local 11-referred workers for Martin Sports on May 9, 12, 27, and 29, 2019 is $3,628.31, which includes $2,721.23 to the pension fund, $680.31 to the annuity fund, and $226.77 to the Joint Apprentice Committee Educational Trust ("JACET"). See ART Invoices [Doc. No. 55-2]; 2019 Agreement Addendum, § Method of Payment [Doc. No. 46-2].

Under Section § 1132(g)(2), "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." Upon review, the 2019 Agreement does not contain any such interest rate. Section 6621 provides that "[t]he underpayment rate . . . shall be the sum of—(A) the Federal short-term rate

determined under subsection (b)[7], plus (B) 3 percentage points." 26 U.S.C. § 6621(a)(2). In this case, the applicable Federal short-term rate is 4%[8], which, added to 3 percentage points, results in an interest rate of 7% for a total of $253.98 in interest on unpaid contributions.

Section § 1132(g)(2)(C) further provides that the court shall award "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)" for unpaid contributions. The 2019 Agreement contains a liquidated damages clause that states that "[p]ayment must be received no later than 10 days from receipt of final invoice," otherwise "[d]elinquent payments [are] subject to a fee based on 1.5% of gross wages per each day of delinquency." 2019 Agreement Addendum, § Method of Payment [Doc. No. 46-2]. Where Martin Sports has yet to make the payments due in May and June 2019, the liquidated damages provided for in the 2019 Agreement clearly exceed the 20% statutory cap and liquidated damages are limited to 20% of $3,628.31 in unpaid contributions, totaling $725.66.

Trustee Plaintiffs are also entitled to reasonable attorney's fees and costs related to the action, see 29 U.S.C. § 1132(g)(2)(D), which shall be determined on a motion for fees and costs.

---

[7] Section 6621(b) provides that "[t]he Secretary shall determine the Federal short-term rate for the first month in each calendar quarter," 26 U.S.C. § 6621(b)(1), and relevant here, "the Federal short-term rate determined under paragraph (1) for any month shall apply during the first calendar quarter beginning after such month." 26 U.S.C. § 6621(b)(2)(A).

[8] Rev. Rule. 2023-1 Table 1, Applicable Federal Rates for October 2022, https://www.irs.gov/pub/irs-drop/rr-22-18.pdf; Determination of Rate of Interest, Internal Revenue Service, https://www.irs.gov/pub/irs-drop/rr-22-18.pdf.

In sum, Trustee Plaintiffs are entitled to $3,628.31 in unpaid contributions, $253.98 in interest on unpaid contributions, and $725.66 in liquidated damages, totaling $4,607.95, and reasonable attorney's fees and costs to be determined at a later date.

      c.   Amounts Due to Anderson and to the Class Members Who Do Not Opt Out of this Action or Additional Plaintiffs Who Opt In

Under Section 150 of the Wage Act, "[a]n employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees." M.G.L. c. 149, § 150.

For work on May 9, 2019, the first ART generated invoice billed the following amounts that remain unpaid by Martin Sports as to each individual: (1) Sherwin Marcelle ($294.54); (2) Brendan Ritchie ($294.54); (3) Joseph St. Croix ($294.54); (4) John C. Price ($350.61); (5) Steven Bonarrigo ($368.17); (6) John C. Price ($368.17); (7) Mikaela Puopolo ($368.17); (8) Tracy T. Quigg ($438.26); (9) Daniel R. Caplette ($662.71); (10) James B. Lavey ($662.71); (11) Bryan Phillips ($662.71); (12) Corey R. Prendergast ($662.71); (13) John Tammaro ($662.71); (14) Gary T. Thompson Jr. ($662.71). See ART Invoices [Doc. No. 55-2].

For work completed on May 12, 2019, the same invoice billed the following amounts that remain unpaid by Martin Sports as to each individual: (15) Douglas C. Anderson ($441.81); (16) Danielle R. Caplette ($441.81); (17) Kenneth Caruso ($441.81); (18) Arthur Davis ($441.81); (19) Susan Margaca ($441.81); (20) Dan Martinez ($441.81); (21) Brian A. Moore ($441.81); (22) Joseph Polish ($441.81); (23) Corey R. Prendergast ($441.81); (24) Christopher Royle ($441.81); (25) David Skinner ($441.81); (26) Brian Weathers ($441.81); (27) Barry Dorion

($883.61); (28) David Hughes ($883.61); (29) James W. Mulrey III ($883.61); (30) Tracy T. Quigg ($1,051.83). Id.

In total, ART billed $15,757.64 as wages for work completed by Local 11-referred workers on behalf of Martin Sports on May 9 and 12, 2019. Id.

For work on May 27 and/or 29, 2019, the ART generated invoice billed the following amounts that remain unpaid by Martin Sports as to each individual: (1) Barry Dorion ($204.54); (2) Brian A. Moore ($204.54); (3) John Nagaki-Dilazzaro ($204.54); (4) Tracy T. Quigg ($204.54); (5) Bryan Salmon ($204.54); (6) Diana Grygo ($243.48); (7) Justin Brady ($528.40); (8) Karen O'Leary ($528.40); (9) James C. Crowley ($547.83); (10) Peter Kares ($568.12); (11) Jeremy Smith ($732.94); (12) Michael T. Quigg ($872.47); (13) Jeremy Ogungbadero ($937.48); (14) Joseph Polish ($937.48). Id.

In total, ART billed $6,919.30 as wages for work completed by Local 11-referred workers on behalf of Martin Sports on May 27 and 29, 2019. Id.

Accordingly, each Local 11-referred employee for whom ART generated an invoice that was not paid by Martin Sports is entitled to treble the amount of wages provided for in the ART invoice as to him or her, and reasonable attorney's fees and costs to be determined at a later date.

### III.    Conclusion

For the forgoing reasons, Anderson's Motion to Certify the Class or in the Alternative to Add Forty-Three Additional Plaintiffs [Doc. No. 57] IS GRANTED as set forth above and no later than April 5, 2023, Anderson shall file a Motion for notice to the class or a Notice of Joinder of the Additional Plaintiffs. Defendants' Motion for Summary Judgment [Doc. No. 54] is DENIED, and Plaintiffs' Motion for Summary Judgment [Doc. No. 55] is GRANTED as to Martin Sports and David Martin and DENIED as to Theresa Martin.

27

With respect to Trustee Plaintiffs' claim against Martin Sports, the Trustee Plaintiffs are entitled to:

- $3,628.31 in unpaid contributions;

- $253.98 in interest on unpaid contributions;

- $725.66 in liquidated damages; and

- reasonable attorney's fees and costs of the action to be determined at a later date by separate motion.

With respect to Anderson's Wage Act claim brought on behalf of himself and the class members against Martin Sports and David Martin, in accordance with the 2019 Agreement and Mass. Gen. Laws ch. 149, §§ 148 and 150, the following class members or additional plaintiffs are entitled to treble damages on the unpaid wages in the amounts listed below that ART billed on their behalf:

- Sherwin Marcelle: $294.54
- Brendan Ritchie: $294.54
- Joseph St. Croix: $294.54
- Steven Bonarrigo: $368.17
- John C. Price: $350.61 and $368.17
- Mikaela Puopolo: $368.17
- Tracy T. Quigg: $438.26, $1,051.83, and $204.54
- Daniel R. Caplette: $662.71 and $441.81
- James B. Lavey: $662.71
- Bryan Phillips: $662.71
- Corey R. Prendergast: $662.71 and $441.81
- John Tammaro: $662.71
- Gary T. Thompson Jr.: $662.71
- Douglas C. Anderson: $441.81
- Kenneth Caruso: $441.81
- Arthur Davis: $441.81
- Susan Margaca: $441.81
- Dan Martinez: $441.81
- Brian A. Moore: $441.81 and $204.54

- Joseph Polish: $441.81 and $937.48
- Christopher Royle: $441.81
- David Skinner: $441.81
- Brian Weathers: $441.81
- Barry Dorion: $883.61 and $204.54
- David Hughes: $883.61
- James W. Mulrey III: $883.61
- John Nagaki-Dilazzaro: $204.54
- Bryan Salmon: $204.54
- Diana Grygo: $243.48
- Justin Brady: $528.40
- Karen O'Leary: $528.40
- James C. Crowley: $547.83
- Peter Kares: $568.12
- Jeremy Smith: $732.94
- Michael T. Quigg: $872.47
- Jeremy Ogungbadero: $937.48

No later than April 5, 2023, Anderson shall file a Motion for notice to class members containing the information required under Fed. R. Civ. P. 23(c)(2)(B) or counsel shall file a Notice of Joinder identifying the Additional Plaintiffs opting in. Anderson shall bring any request for attorney's fees and costs under Mass. Gen. Laws ch. 149, § 150, by separate motion, and if proceeding as a class action, must first comply with the procedural requirements of Fed. R. Civ. P. 23(h).

Anderson's Wage Act claim brought on behalf of himself and the class members as to Theresa Martin remains pending.

IT IS SO ORDERED.

Dated: March 22, 2023                                    /s/ Indira Talwani
                                                        United States District Judge

29